INTERSTATE COMMERCE COMMIS-
SION, Plaintiff,

v.

**W. H. DUDGEON, an individual, doing business as All States Drive-Aways Agency, Defendant.**

No. 422-60.

United States District Court
S. D. California,
Central Division.

Sept. 8, 1961.

Certiorari Denied April 1, 1963.

See 83 S.Ct. 1015.

William L. Harrison, Regional Atty., I. C. C., Bureau of Inquiry and Compliance, San Francisco, Cal., for plaintiff.

Edward K. Brody, Los Angeles, Cal., for defendant.

BYRNE, District Judge.

This cause came on for trial before the court without a jury. The plaintiff

appeared by its attorney, William L. Harrison, and the defendant, W. H. Dudgeon, appeared by his attorney, Edward K. Brody. The case was submitted upon an agreed statement of facts contained in the Pre-trial Order and additional evidence was adduced at time of trial. Briefs were filed by both parties. The court being advised in the premises makes its findings as follows:

I.

## FINDINGS OF FACT

### 1.

The jurisdiction of this court is invoked under the provisions of Part II of the Interstate Commerce Act, (49 U. S.C. § 322(b)). The plaintiff seeks to enjoin and restrain the defendant from transporting automobiles, in driveaway service, in interstate commerce, for compensation, as a common or a contract carrier, without having been issued to him a certificate of public convenience and necessity or a permit by the Commission authorizing him to engage in such operations or business.

### 2.

Defendant maintains an office and place of business in the City and County of Los Angeles, California. He has been engaged in the "driveaway" business since approximately March 15, 1957, and he is presently engaged in such business.

### 3.

Defendant advertises his business to the general public. He utilizes the yellow pages of the Los Angeles Telephone Directory, circulates the usual type of business cards, distributes ball-point pens and displays advertising on his private business automobile. These advertisements note as follows: "Car Delivered Anywhere", and "Automobile delivery service to anywhere in the United States". Also, the advertisements carry the statement: "Bonded—Insured".

### 4.

Defendant utilizes business forms and contracts in the consummation of any one transaction as follows: (1) contract with the owner, (2) a driver's application form, and (3) a lease agreement. The forms, the terms, conditions and restrictions contained therein, are composed, prepared and printed by defendant. Substantially, the base arrangements in each transaction are those between the defendant and the car owner, and those between the defendant and the driver. Defendant testified that upon initial inquiry by a car owner the contracts were displayed and the contents thereof were fully explained. Upon acceptance of the terms by the owner and delivery of the car to the defendant a receipt for the car is issued by the defendant.

### 5.

With respect to the arrangement with the owner, defendant's contract states that the car has been released to him "for the purpose of selecting a reliable driver for a one-way trip from (origin to destination)". The contract also provides that title or ownership papers rest with the legal owner and the car is properly licensed and registered; that defendant "will be responsible for the first $50.00 only"; and, that "all necessary repairs, adjustments, oil or anti-freeze necessary, plus all caravan and port of entry fees assessed by states necessary to pass through will be at owner's expense. In event there should be a complaint of any nature, please withhold payment and contact our office immediately". The contract is signed by the owner as "shipper" and by the defendant as "agent".

### 6.

Defendant's arrangement with the driver is consummated under a "lease agreement" wherein defendant, as "agent" of the owner, leases the car, for the duration of the trip, to the driver. The contract utilized makes it appear that the driver is in privity with the owner through the intervention of the defendant acting as "agent" for the owner. Drivers agree to pay for their own meals, lodging, oil and gasoline and

the usual highway or bridge tolls. The driver is given instructions as to the highways to be traversed, the number of miles to be traveled, and the date of delivery. He is directed to call the owner at destination in case of emergency. Provisions are contained as to passengers, if any, who may be transported, as to compliance by the driver with the local state regulations and as to payment for minor repairs. The driver waives any claim against both the defendant and the owner for any injury sustained. Additionally, the driver is advised and instructed by defendant as to any mechanical peculiarities or special handling required of a car as reported by the owner. A deposit of money is required to be made by the driver with the defendant to insure safe and timely delivery of the automobile with the provision that if no loss or damage occurs an equal sum of money will be "refunded" by the owner at destination.

### 7.

Drivers are secured and "screened" by defendant. They are secured from lists maintained by the defendant or in some cases the defendant will advertise for a driver. Generally, drivers are available and register with defendant because of the common knowledge of the business as advertised and they seek reduced transportation costs from the Los Angeles area to various points in the United States to which they desire to travel. The screening substantially consists of securing the identification of a driver, past employment, inquiring into his driving qualifications and requiring that he furnish references. In some instances, the driver has not been introduced to the owner of the car, has never had any conversation or other course of dealing with an owner prior to his departure with a car. His only meeting with the owner is at point of destination when the car is delivered. In some instances, when an owner has so requested, the defendant has introduced the driver to the owner.

### 8.

The evidence discloses that defendant bases his charges for service upon the distance traveled. At times, he may reduce the charge when a potential customer indicates that lower rates are available from competitors. In the instant case, from Los Angeles, defendant charged and collected for delivery to: New York—$100.00, Philadelphia—$95.-00, Tennessee—$75.00, and Chicago—$60.00.

### 9.

When the car is released to the defendant, the owner pays the difference between the total quoted price and $50.-00. When the car is turned over to the driver, the driver pays the defendant the sum of $50.00. In this manner the defendant receives his full price for the service. When the car is delivered to the owner, he "refunds" the driver his $50.00, except in case of loss or damage the cost thereof may be subtracted from the amount due the driver up to $50.00. In this manner the owner pays the quoted price for the service and secures his "bonded" protection up to $50.00. Also, the defendant's contract with the driver has been fulfilled.

### 10.

A representative transaction is as follows. On the 22nd day of September, 1959, owner Mrs. W. J. Heinz made arrangements with defendant to have her car delivered to New York City, New York. Defendant quoted a charge of $100. Upon delivery of the automobile to defendant, Mrs. Heinz paid $50.00. One Irving Handle was selected and screened by defendant to drive this automobile and the car was turned over to him to drive under a "lease agreement". Handle deposited $50.00 with defendant. Upon delivery of the car at New York, driver Handle received a refund of $50.00 from the owner thereof. Defendant received the sum of $100 for his services in connection with the delivery of this car to Mrs. Heinz from Los Angeles to New York City.

**11.**

Defendant does not provide personal injury and property damage insurance. He expressly disclaims to assume such obligation at the time of his initial arrangement with the owner.

**12.**

Defendant contends that his business undertaking is in the nature of an employment agency in seeking out and screening drivers for automobile owners and that he is not a common carrier or a contract carrier as defined in the Interstate Commerce Act, Part II, and therefore, is not subject to the jurisdiction of the Commission.

**13.**

Defendant does not possess, nor has he possessed, a certificate of public convenience and necessity, a permit or any other authority issued by the Interstate Commerce Commission authorizing him to engage in such operations or business.

**14.**

The defendant intends to and will in the manner and form aforesaid, or otherwise, continue to engage in a drive-away service involving the delivery of automobiles moving in interstate commerce without having first obtained from the Commission a certificate as a common carrier or a permit as a contract carrier authorizing him to engage in such operations and business unless restrained by this court.

## II.

## CONCLUSIONS OF LAW

**1.**

This court has jurisdiction over the subject matter and of the defendant under and by virtue of the provisions of Part II of the Interstate Commerce Act (49 U.S.C. § 301 et seq.), and particularly under Section 222(b) thereof, (49 U.S.C. § 322(b)) and the general laws and rules relative to suits in equity.

**2.**

■■ Part II of the Interstate Commerce Act is a highly remedial statute, and its terms are broadly comprehensive enough to bring within them all of those who, no matter what form they use, are in substance engaged in the business of transportation of property on the public highways for hire, (Georgia Truck System, Inc. v. Interstate Commerce Commission, 123 F.2d 210). The Act being a remedial statute, it should be liberally interpreted to effect its evident purpose. (McDonald v. Thompson, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. 164; Piedmont and N. Ry. Co. v. Interstate Commerce Commission, 286 U.S. 299, 52 S.Ct. 541, 76 L.Ed. 1115).

**3.**

■ The documents, agreements and contracts utilized by defendant appear to be designed to avoid the application of the provisions of the Interstate Commerce Act to the transportation performed and they are of no legal effect wherein the terms are in contradiction to the facts. The lease agreement employed by defendant wherein defendant "leases" the owner's car to the driver for the duration of the trip, is not a bona fide lease, but is a mere subterfuge under the guise of which defendant attempts to screen his unlawful operations.

**4.**

■ The fact that the charges for the service is related to the distance traveled, together with the fact that defendant can, and in many instances does, reduce the quoted rate to meet competition, discredits the contention that the rate charged is for screening a driver.

**5.**

■ The advertisements of the defendant constitute a holding out of an automobile transportation service within the meaning of Section 203(a) (14) of the Interstate Commerce Act, Part II, (49 U.S.C. § 303(a) (14)).

**6.**

■ There is an active concurrence or privity of contract between the owner of each automobile and the defendant, in the consummation of any one transac-

tion. Although it is made to appear that the owner contracts with the driver for the transportation and delivery of his car, the initial terms and conditions surrounding each movement are prescribed by defendant with each individual owner. The defendant by his holding out, as well as by his verbal representations to each owner, undeniably establishes an expectation on the part of the owner that the defendant assumes to perform a transportation service. The owner accepts the defendant's terms and conditions, turns over to defendant his property and pays the defendant his quoted charge. The defendant assumes the right, power and duty to perform the service within the scope of his holding out.

### 7.

A driver is necessary to accomplish the terms of defendant's holding out. In order to accomplish this purpose, the drivers are not only selected by the defendant, but must necessarily be under his control during the course of transportation. The drivers receive their instructions from the defendant and they look to the defendant as their employer. In some instances, a special effort is made by the defendant to bring together the owner and the driver at the point of origin but the court considers this is to be nothing more than a calculated maneuver to make it appear that the defendant has rendered only a driver "screening" service and that the contract of driving has been entered into between the owner and the driver. In so far as any individual trip is concerned, the driver is an agent or employee of the defendant and his employment during such time is under the supervision and control of the defendant.

### 8.

For each automobile transported the defendant charges and receives a definite sum of money from the owner thereof, and the receipt of such money is compensation within the meaning of Part II of the Interstate Commerce Act.

### 9.

The defendant furnishes substantially all of the facilities for, and performs substantially all of the functions of transporting automobiles for individual owners, in driveaway service, in interstate commerce, for compensation, and is a common carrier by motor vehicle as defined in Section 203(a) (14) of the Interstate Commerce Act, Part II, (49 U.S.C. § 303(a) (14). Such operations are subject to the certificate provisions of Section 206(a) of the Act (49 U.S.C. § 306(a)).

### 10.

The acts of the defendant constitute violations of Section 206(a) of the Interstate Commerce Act, (49 U.S.C. § 306 (a)), and as such, are subject to be enjoined by this court under the express provisions of Section 222(b) of said Act. (49 U.S.C. § 322(b)).

### III.

### JUDGMENT

This cause having come on for trial, and the issues therein having been tried before the court without a jury and the evidence of the parties hereto having been heard, and the court having duly made findings of fact and conclusions of law;

It is hereby ordered, adjudged and decreed that the defendant, W. H. Dudgeon, an individual, doing business as All States Drive-Aways Agency, his agents, employees and representatives, and all persons acting by or under the direction or in active concert or in participation with said defendant, are hereby permanently enjoined and restrained from, directly or indirectly, transporting or arranging for the transportation of automobiles, in driveaway service, by motor vehicle, in interstate commerce, over public highways, for compensation, as a common carrier, until such time, if at all, as there is in force with respect to said defendant a certificate of public convenience and necessity or other appropriate form of authority issued by

the Interstate Commerce Commission authorizing such operations.

Jurisdiction of this cause is retained for the purpose of giving full effect to this judgment and decree, and for the purpose of making such further and other orders and decrees, or taking such further action, if any, as may become necessary or appropriate to carry out and enforce this decree.