**BOWMAN TRANSPORTATION, INC., a corporation, Plaintiff,**

**v.**

**UNITED STATES of America and the Interstate Commerce Commission, Defendants.**

**Civ. A. No. 1256.**

United States District Court
N. D. Alabama, M. D.

Nov. 2, 1962.

Bishop & Morris, Birmingham, Ala., R. J. Reynolds, Jr., Atlanta, Ga., H. Charles Ephraim, Washington, D. C., for plaintiff.

Macon L. Weaver, U. S. Atty., Birmingham, Ala., John H. D. Wigger, Attorney, Department of Justice, and Lee Loevinger, Asst. Atty. Gen., Department of Justice, Washington, D. C., Robert W. Ginnane, Gen. Counsel, and Arthur J. Cerra, Asst. Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for defendants.

Wrape & Hernly, and Glenn M. Elliott, Memphis, Tenn., Watkins & Daniell and Otis E. Stovall and Clyde W. Carver, Crimm & Postell, and Ariel V. Conlin, and Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for intervening defendants.

Before RIVES, Circuit Judge, and LYNNE and ALLGOOD, District Judges.

LYNNE, District Judge.

Brought under 28 U.S.C.A. §§ 1336, 1398, 2284, and 2321 to 2325, inclusive; 49 U.S.C.A. §§ 17(9), 305(g) and 305(h), and 5 U.S.C.A. § 1009, this action, to set aside and annul orders of the Interstate Commerce Commission, dated October 7, 1957, and May 17, 1961, entered in a consolidated proceeding embracing docket numbers MC–C–188, B & M Express, Inc.; et al. v. Bowman Transportation, Inc., and MC–94201 (Sub-No. 37), Bowman Transportation, Inc., Extension—Five Point Authority, reported at 73 M.C.C. 109 and 86 M.C.C. 189, was submitted on plaintiff's prayer for final relief, the certified record of the hearings before the Commission, consisting of 3,-248 pages and 176 exhibits, and upon the briefs and oral arguments of counsel.

Plaintiff is a common carrier of property by motor vehicle authorized by its certificate of public convenience and necessity No. MC–94201 to transport, in interstate commerce, over irregular routes:

"General commodities, except those of unusual value, and except dangerous explosives, livestock, commodities in bulk, commodities requiring special equipment, and those injurious or contaminating to other lading, in truckload lots, and household goods as defined in Practices of Motor Common Carriers of Household Goods, 17 M.C.C. 467.

"Between Cedartown, Lindale, Mount Berry, Rome, and Summerville, Ga., on the one hand, and, on the other, points and places in Alabama, Florida, Georgia, North Carolina, South Carolina and Tennessee."

Under this authority, repeatedly referred to in the record, briefs and oral arguments as "The Five-Point Authority", combined with other authority held by it, plaintiff has transported less-than-truckload shipments of general commodities in single-line movements between various authorized points.

By complaint filed with the Commission on October 10, 1955, B & M Express, Inc., and twenty-one other common carriers, alleged that plaintiff's transportation of general commodities in less-than-truckload lots is without appropriate authority in violation of 49 U.S.C.A. § 306 and contrary to the "truckload lot" restriction in its above quoted certificate. The Commission was requested to order plaintiff to cease and desist from conducting such operations in the future. This proceeding was assigned docket No. MC–C–1888.

By application filed January 13, 1956, plaintiff sought a certificate of public convenience and necessity authorizing it to transport, in interstate commerce, over irregular routes, the same commodities and between the same points described in the above-quoted certificate but without the "truckload lot" restriction. Relying upon a time-honored practice in Commission proceedings, by motion filed with the application, plaintiff moved to dismiss its application if the allegations of the com-

plaint should be found to be without merit. Twenty-seven motor carriers opposed the application. This proceeding was assigned docket No. MC–94201 (Sub-No. 37).

Any recital of a history of the proceedings before the Commission which resulted in the orders complained of, from the first order of March 5, 1956, through the final order of January 12, 1962, even in capsulated form, would unduly extend this opinion. In the interest of brevity, with apology to accuracy, we advert to certain highlights which bring into sharp focus the vital issues before us.

Examiner Richard Yardley, able and experienced, to whom the consolidated complaint and application cases were referred, served his report and recommended order on January 9, 1957, in which he found the Five Point Authority unambiguous, and concluded:

(1) "that the grammatical construction of the certificate is that the words 'in truckload lots' modifies or refers to the exceptions and has no reference to general commodities."

(2) in No. MC–C–1888, that Bowman "has not been, and is not, transporting general commodities, with certain exceptions, in violation of Section 206(a) of the Act and that the complaint should be dismissed"; and,

(3) in No. MC–94201 (Sub-No. 37), that Bowman "presently holds the authority sought and that the Motion to Dismiss the application should be granted."

Thereafter the report and order of the Commission, Division 1, dated October 7, 1957, was served October 15, 1957. (73 M.C.C. 109.)

Such report found the Five Point Authority "sufficiently ambiguous" for resort to antecedent matters, and through resort to such matters in its own files, though not in evidence, concluded that the phrase "in truckload lots" in the Five Point Authority modifies "general commodities" therein. The report construed the term "in truckload lots" as limiting plaintiff's handling of "general commodities" as follows:

"When the quantity of a shipment substantially fills the carrying capacity of a vehicle ordinarily used in intercity transportation it is generally considered a truckload, and when the quantity is substantially below the carrying capacity of a vehicle it is considered a less-than-truckload."

It concluded:

(1) "In No. MC–C–1888 we find that [plaintiff] has transported general commodities, in less-than-truckload lots or shipments as defined herein, in violation of the act and of the terms of its certificate No. MC–94201, and that an order should be entered requiring it to cease and desist, and thereafter to refrain, from performing transportation service of the type herein found to be authorized."

(2) "In No. MC–94201 (Sub-No. 37), we find that [plaintiff] has failed to establish that the present or future public convenience and necessity require the proposed operation, and that the application should be denied."

Reopening the proceedings, the Commission referred them to hearing examiner Leo W. Cunningham for further hearings. After extensive hearings, Examiner Cunningham, also able and experienced, served his report and recommended order on September 22, 1960. He found that the phrase "in truckload lots" modifies "general commodities" in the Five Point Authority; that plaintiff had not knowingly or wilfully performed service in violation thereof, and that public convenience and necessity require a grant of authority reading in the same terms as the Five Point Authority except for deletion of the phrase "in truckload lots". He found plaintiff fit, willing and able properly to perform the service proposed and recommended issuance of appropriate authority. He further recommended that the complaint case be discontinued in the

light of the recommended disposition of the application case.

On May 17, 1961, the Commission, Division 1, on further hearing adopted the statement of facts contained in Examiner Cunningham's report but concluded:

(1) "Upon further hearing, in No. MC–C–1888 we find that the [plaintiff] has transported general commodities, in less-than-truckload lots, in violation of the terms of its certificate No. MC–94201, and that an order should be entered requiring it to cease and desist and thereafter to refrain from performing transportation service of the type herein found to be unauthorized." (In its October 7, 1957, report 73 M.C.C. 109.)

(2) "Upon further hearing, in No. MC–94201 (Sub-No. 37), we find that [plaintiff] has failed to establish that the present or future public convenience and necessity require the proposed operation, and that the application should be denied."

While defendants rely heavily upon the proposition that the ultimate finding or conclusion, or both, of the Commission that plaintiff failed to establish that the present or future public convenience and necessity require the deletion of the "in truckloads" restriction from its certificate, is supported by substantial evidence in the record, a subsidiary finding, or conclusion, or both, has required a painstaking examination of this voluminous record.

In 86 M.C.C. at 194, the Commission, Division 1, made and entered the following finding of fact and conclusion of law:

"The less-than-truckload shipments admittedly transported by [Bowman] and by his corporate successor were obviously illegal. This type of transportation was not performed in good faith, and it cannot now be relied upon either to establish a public need for service or to show an established and continuing operation justifying modification of its certificate."

Broadly attacking the Commission's findings and conclusions interpreting the commodity description in its certificate No. MC–94201, the plaintiff is here insisting that there is no ambiguity on the face of such certificate; that the phrase "in truckload lots", set off by villainous commas, patently modifies the exceptions to and not the comprehensive description "general commodities"; that the Commission erred in its finding of ambiguity and its resultant resort to extraneous evidence in its process of interpretation, and, finally, that its construction of the phrase "in truckload lots" to impose a restriction or limitation on plaintiff's right to transport general commodities to a shipment from a single consignor to a single consignee when the quantity of such shipment substantially fills the carrying capacity of the vehicle used was capricious or arbitrary.

We dispose of plaintiff's contentions in the interpretation phase of this case by relying upon our opinion in Malone Freight Lines v. United States, 107 F. Supp. 946 (N.D.Ala.1952), supported by the cases cited therein. We held, at page 949, that:

"Our function does not involve a *de novo* construction of the certificate or a re-evaluation of the undisputed facts relating to the services being performed under the pretended warrant of its authority. We are not concerned with the weight of the evidence. The scope of our review is necessarily confined to the interpretation placed by the Commission upon a certificate of its own creation. We are bound by that interpretation unless we are persuaded that it was capricious or arbitrary, that it constituted an abuse of discretion, or that it did violence to some established principle of law. It is beyond our province to consider 'the soundness of the reasoning by which its conclusions were reached'."

By rejecting plaintiff's contentions in this aspect of the case we do not imply agreement with the Commission's

definition of the nebulous phrase "in truckload lots". Our precise holding is that, on this record, the Commission's interpretation of plaintiff's certificate is not shown to have been capricious or arbitrary, to have constituted an abuse of discretion, or to have done violence to some established principle of law.

■ While we sustain the Commission in construing plaintiff's certificate by applying the phrase "in truckload lots" to its authority to transport general commodities, it does not follow that its interpretation of such certificate first appearing in its report of October 7, 1957, may be retrospectively applied to condemn as "obviously illegal" the less-than-truckload shipments admittedly transported by Bowman and by his corporate successor in the years preceding such report.

Although there is substantial, even compelling, evidence in the record that when Ralph M. Bowman, plaintiff's transferror, purchased this authority in 1940 from J. M. Brown, doing business as Brown Transfer and Storage Company, of Rome, Georgia, it was his understanding that such operating rights restricted shipments of general commodities to truckload shipments only, the record is equally clear that, as early as 1950 when his authority was questioned, he consulted a respected attorney who had had wide experience in proceedings before the Commission and was advised by him that on its face such certificate did not limit shipments of general commodities to truckload lots. By cavalierly characterizing this opinion as "off-the-cuff" the Commission probably intended to infer no more than its reckoning that the attorney's opinion probably would have been different had he searched the antecedent history. But that is beside the point.

Additionally, the Commission's conclusion of obvious illegality is at war with the identical opinion expressed by the able and experienced examiner, Richard Yardley, in his recommended report and order, served January 9, 1957, wherein he expressly stated: " * * * the examiner finds that the grammatical construc-tion of the certificate is that the words 'in truckload lots' modifies or refers to the exceptions and has no reference to general commodities."

But assuming that it was obvious to Bowman and his corporate successor that such certificate authorized shipments of general commodities "in truckload lots" only it does not follow that the shipments transported prior to October 7, 1957, were obviously illegal or that such transportation was not performed in good faith.

There is no evidence in this record that at any time between 1940 and 1957 Bowman understood the limitation expressed in the phrase "in truckload lots" to confine his authority to a physical truckload shipment between a single consignor and a single consignee. On the contrary, the overwhelming weight of the evidence is that he honestly believed that such phrase, though construed as a limitation of authority to transport general commodities, permitted an accumulation of shipments to a truckload moving from more than one consignor to more than one consignee.

Adverting to the fact that in recent years the Commission has refused to issue any authority as to the size or weight of any shipment to be handled, in his recommended report and order, served September 22, 1960, Examiner Leo W. Cunningham expressed the opinion that the restriction "in truckload lots" is an "indefinite and vague restriction and it is not capable of being enforced from a practical standpoint." He concluded that the record, which we now review, does not show that Bowman's past operations, though in excess of actual authority, "were performed wilfully and knowingly." We agree.

A careful review of this record reveals pointed disagreement among carrier witnesses as to the understanding within the industry of the meaning of the "in truckload lots" restriction. Various criteria were said to enter into a proper interpretation of the phrase, including the nature of the commodity being trans-

ported, the minimum weight under which the volume rate is determined, the size of the equipment employed in the movement, the gross weights which can be transported in the states involved, the application of volume rates to shipments involving stopping in transit for partial unloading, and shipments offered at one time on one bill of lading from one consignor to one consignee which fill the visible or weight-carrying capacity of the vehicle used.

We do not deny to the Commission, in the process of interpretation, the right to crystallize the phrase "in truckload lots." But we conclude that there is no substantial evidence in this record to support its subsidiary conclusion that "this type of transportation was not performed in good faith." That plaintiff has previously relied upon factors in defining the limitation of its authority which the Commission now finds impermissible does not rise to the level of evidence of bad faith.

That the findings and conclusions of obvious illegality and bad faith respecting past operations were gravely prejudicial in the application phase of this case is underlined by the conclusion that "[this type of transportation] cannot now be relied upon either to establish a public need for service or to show an established and continuing operation justifying modification of its certificate."

Our case of Floyd & Beasley Transfer Co. v. United States, 185 F.Supp. 390 (N.D.Ala.1960), is readily distinguishable on its facts. There, unlike here, the carrier who was applying for a certificate of public convenience and necessity had been engaging in operations under a patently absurd construction and in flagrant disregard of the terms of its certificate.

Accordingly, we remand this case to the Commission for further hearing in No. MC–94201 (Sub-No. 37) for a determination, upon this record or in such other proceedings which it may, in its discretion, elect to order or conduct, of whether Bowman Transportation, Inc. has established that the present or future public convenience and necessity require

the operation proposed in its application, unprejudiced by findings and conclusions that its past transportation operations were illegal and not performed in good faith.