INTERSTATE COMMERCE COMMIS-
SION, Plaintiff,

v.

INTERSTATE AUTO SHIPPERS, INC.
and Alfred M. Rappeport,
Defendants.

United States District Court
S. D. New York.

Feb. 7, 1963.

Seymour Glanzer, Larsh B. Mewhinney, New York City, for plaintiff.

H. Howard Friedman, New York City, for defendants.

LEVET, District Judge.

This is a motion for a preliminary injunction whereby the plaintiff seeks to restrain the defendants from transporting property in interstate commerce as a common carrier by motor vehicle in violation of Section 206(a) of the Interstate Commerce Act (49 U.S.C. § 306(a)). Following service of a verified complaint and verified answer, the plaintiff, by order to show cause, brought on an application for a temporary restraining order. This court conducted a hearing on plaintiff's application and evidence was adduced.

The proposed findings of fact, conclusions of law and briefs of the parties having been received, the court, after considering the pleadings, evidence, exhibits and the stipulation of the parties, now makes and files herein its Findings of Fact and Conclusions of Law, separately stated:

## FINDINGS OF FACT

1. The defendant corporation, of which the individual defendant is the president and sole stockholder, maintains an office and place of business in the City and County of New York, New York, within the jurisdiction of this court.

2. From sometime in 1958 to the present the defendants have been engaged in the "driveaway" business in interstate commerce.

3. "Driveaway" is a service sought by owners of automobiles, traveling to a given destination by another mode of transportation, who wish their cars delivered to that destination.

4. The defendants advertise their business to the general public in the Manhattan Yellow Pages and in The New York Times (Pl. Exs. 3 and 4 and Exs. 3, 4 and 5 attached to Clark's affidavit in Pl. Ex. 7). The Yellow Pages advertisement is contained under the heading of "automobile transporting." A quarter page advertisement holds out "Agents in Principal Cities of U.S.A.," "Insurance Arranged Drivers' Bonds Posted," "Ship Your Car at Low Rates Nationwide & Overseas Via Steamer-Rail-Driveaway." The Commercial Notice Section of The New York Times contains the following sample: "Reliable drivers, Florida, Tucson, Denver, Chicago. Immediate."

5. In response to advertising or through word of mouth, those persons who wish their automobiles delivered to nationwide destination points via "driveaway" service communicate with the defendants. If the terms and arrangements are satisfactory, car owners enter into a series of written agreements with the defendants on printed forms provided by the defendants. While the circumstances may vary slightly depending on the car owner's needs, the transaction involving the shipment of an automobile owned by one Michael Nastacio is representative of all.

Nastacio sought to have his car transported from Brooklyn, New York to Colorado Springs, Colorado. On October 26, 1960 he entered into a driveaway agreement (Ex. 6 attached to Pl. Ex. 7) with the defendants. By its terms the defendants are authorized to act as agents for Nastacio to engage a driver for him and to deliver the automobile to destination. The agreement sets forth certain instructions to be given the driver by the defendants, including such items as the routes to be traveled, notification in case of accident, and authorization that the driver is to retain possession of the vehicle until he receives payment of the balance of delivery charges. In the event of accident the defendants agree to pay up to $50.00, if the car owner carries a collision insurance policy. Nastacio paid the defendants $115.00 on entering into the driveaway agreement.

Thereupon, on October 28, 1960, the defendants entered into a Driver Agreement with one Edward Bonville, to deliver Nastacio's car to destination. (Ex. 7 attached to Pl. Ex. 7) The agreement is signed by defendant Alfred M. Rappeport, as dispatcher for the corporate defendant. It sets forth the routes to be traveled, time allowed for delivery and defines the driver's duties and responsibility. The driver agrees to deposit $50.00 as a "bond" to be refunded upon delivery of the car, but which may be forfeited due to driver's negligence. The driver is required to telephone the defendants in case of accident or major service and await further instructions. After the allowed time for delivery has elapsed, the defendants are permitted to take all steps necessary to recover the vehicle and the driver may forfeit his "bond."

Upon entering into the driver agreement, Rappeport and the driver signed a form entitled "Temporary In Transit Authorization", which had previously been signed by the car owner. (Pl. Ex. 5) Simultaneously, Bonville was given a post-dated check drawn by the defendants, in the sum of $50.00, as a return of his "bond" deposit.

6. On March 9, 1959, District Supervisor Tomany, plaintiff's representative, advised the defendants, in writing, that its activities were those of an interstate motor common carrier of property for compensation and required authority from the Commission. (Ex. 1 attached to Pl. Ex. 7) On March 11, 1959, Mr. Rappeport advised the supervisor that he would apply to the Commission for authority and until such authority was granted he would cease all driveaway activities. On March 16, 1959, Mr. Rappeport wrote to Mr. Tomany in partial confirmation of the advice given the supervisor at the conference. (Ex. 2 attached to Pl. Ex. 7) For at least two weeks thereafter the defendants ceased to advertise their driveaway business in New York newspapers. However, Mr. Rappeport testified that the defendants never terminated their driveaway operations.

7. Rappeport testified that during 1962 the defendants entered into about 1,500 "driveaway" agreements, of which a substantial number involved interstate transactions. In many instances, unlike the Nastacio "driveaway," the car owner did not pay the entire fee in advance. On those occasions the defendants collected the difference between the agreed-upon fee and the "bond" to be deposited by the driver. When the car was delivered, the owner would reimburse the driver in the amount of his "bond" and the defendants would retain the bond. For example, the usual fee for "driveaway" from New York City to Miami, Florida is $75.00. The owner pays $25.00 in advance to the defendants and the driver deposits $50.00 with the defendants. Upon delivery, the owner pays the driver $50.00 and the defendants retain the "bond" deposit.

8. The defendants will continue to engage in the "driveaway" business in interstate commerce without there being in force and effect a certificate of public convenience and necessity authorizing them or either of them to conduct such operations, unless restrained by this court.

## DISCUSSION

The plaintiff contends that the "driveaway" operations conducted by the defendants are those of a "common carrier by motor vehicle" as defined in Section 203(a)(14) of the Interstate Commerce Act (49 U.S.C. § 303(a)(14)) and that under the provisions of Section 206(a)(1) of said Act (49 U.S.C. § 306(a)(1)), no common carrier by motor vehicle shall engage in any interstate or foreign operations unless there is in force and effect a certificate of public convenience and necessity issued by the Interstate Commerce Commission authorizing such operations. Neither defendant has been issued any authority by the Commission.

The defendants contend they are not engaged in the business of transportation of property by motor vehicle but

that their business is of such a nature as not to require authority from the plaintiff.

Rappeport claims that the defendants' fee is earned solely for "screening" drivers. The "screening" service consists primarily of photographing and fingerprinting drivers, examining identification and being furnished with references. In order to secure drivers, the defendants advertise in the newspapers (Pl. Ex. 6) or rely upon drivers seeing their "driveaway" advertisement in the Yellow Pages. Sometimes the driver is not introduced to the owner and has no dealing with the owner until delivery at destination. On other occasions, at the owner's request, the defendants introduce the driver to the owner.

Although Rappeport claims the defendants' fee is solely for "screening," it is noted that the fee varies in accordance with the distance to be traveled. The New York to Miami fee is about $75.00; the New York to Colorado fee was $115.00 in the Nastacio transaction; and the New York to California fee is about $125.00. Rappeport stated that the fee is determined on the basis of competitive rates and is maintained at about one-fifth that of carriers holding authority issued by the Commission.

Defendants also claim they are exempt from certification by reason of Title 49 U.S.C. § 303(b) (9). Section 303(b) (9) exempts "the casual, occasional, or reciprocal transportation of passengers or property by motor vehicle in interstate or foreign commerce for compensation by any person not engaged in transportation by motor vehicle as a regular occupation or business * * *."

█ The claim of exemption is without merit. The exemption of Section 303 (b) (9) does not apply here because of the repetitious nature of defendants' operations. MC116023 AA Auto Delivery Inc., Common Carrier Application 77 M.C.C. 365. See also Automobile Shippers, Inc., 64 M.C.C. 457.

Defendants are attempting to hide behind the facade of an employment agency.

In a recent case, a court permanently enjoined a defendant from operating its "driveaway" service until it was certified. Interstate Commerce Commission v. Dudgeon, d/b/a All States Drive-Aways Agency (D.C.S.D.Calif.), 213 F.Supp. 710, aff'd without opinion, 9 Cir., November 16, 1962. In Dudgeon, many of the issues presented here were resolved in favor of the Commission. Since the present case is substantially identical with Dudgeon, this court is warranted in granting a preliminary injunction at this time.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the subject matter and of the defendants under the provisions of Section 222(b) of the Interstate Commerce Act (49 U.S.C. § 322(b)) and Section 2 of the Elkins Act (49 U.S.C. § 42).

█ 2. Part II of the Interstate Commerce Act is a highly remedial statute and its terms are broadly comprehensive enough to bring within them all of those who, no matter what form they use, are in substance engaged in the business of transportation of property on the public highways for hire. Georgia Truck System, Inc. v. Interstate Commerce Commission, 5 Cir., 1941, 123 F.2d 210. The Act being a remedial statute, it should be liberally interpreted to effect its evident purpose. McDonald v. Thompson, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. 164 (1938); Piedmont and N. Ry. Co. v. Interstate Commerce Commission, 286 U.S. 299, 52 S.Ct. 541, 76 L.Ed. 1115 (1931).

3. The documents, agreements and contracts utilized by defendants appear to be designed to avoid the application of the provisions of the Interstate Commerce Act to the transportation performed and are not binding upon this court. The driveaway agreement employed by defendants wherein defendants become the car owner's agent to obtain a driver for the trip to destination is not a bona fide agency, but is a mere subterfuge under the guise of which defend-

ants attempt to conceal their unlawful operations.

4. The advertisements of the defendants constitute a holding out of an automobile transportation service within the meaning of Section 203(a) (14) of the Interstate Commerce Act, Part II (49 U.S.C. § 303(a) (14)).

5. For each automobile transported the defendants charge and receive a definite sum of money from the owner thereof, and the receipt of such money is compensation within the meaning of Part II of the Interstate Commerce Act.

6. The test to be applied to determine whether the defendants' operations are subject to the certificate provisions of Section 206(a) of the Act (49 U.S.C. § 306(a)) is whether the defendants have assumed in significant measure the characteristic burdens of the transportation business. United States v. Drum, 368 U.S. 370, 82 S.Ct. 408, 7 L.Ed. 2d 360 (1961). The clear import of the Commission's decision in MC116023 AA Auto Delivery, Inc., Common Carrier Application 77 M.C.C. 365 is that a person who, continuously, as a business, arranges for, obtains or provides a driver to transport a vehicle, owned by another, in driveaway service, has assumed the characteristic burdens of the transportation business. The defendants have assumed the characteristic burdens of the transportation business in the transportation of automobiles, in driveaway service, in interstate commerce for compensation, and are a common carrier by motor vehicle as defined in Section 203(a) (14) of the Act (49 U.S.C. § 303(a) (14)).

7. The acts of the defendants constitute violations of Section 206(a) of the Interstate Commerce Act (49 U.S.C. § 306(a)) and as such are subject to be enjoined by this court under the express provisions of Section 222(b) of said Act (49 U.S.C. § 322(b)).

8. The Interstate Commerce Commission, therefore, is entitled to a preliminary injunction enjoining defendants from violating Section 206(a) of the Interstate Commerce Act (49 U.S.C. § 306(a)).

Settle order on notice in accordance with Rule 65(d) of the Federal Rules of Civil Procedure.