INTERSTATE COMMERCE COMMISSION, Plaintiff,

v.

Everett H. TEETER, doing business as Atlantic-Pacific Driveaways, Defendant.

Civ. A. No. 8460.

United States District Court
N. D. Georgia,
Atlanta Division.

April 16, 1964.

Raymond A. Cunningham and Arthur F. Bronczyk, Trial Attys., Interstate Commerce Commission, Bureau of Inquiry and Compliance, Atlanta, Ga., for plaintiff.

Everett H. Teeter, Atlanta, Ga., pro se.

MORGAN, District Judge.

This cause was instituted by a complaint and a subsequent motion for temporary injunction filed by the plaintiff, the Interstate Commerce Commission. The Court directed the defendant, Everett H. Teeter, doing business as Atlantic-Pacific Driveaways, to show cause why this temporary injunction should not be granted and a hearing was held wherein pertinent evidence was adduced. The temporary injunction was issued by the Court on September 4, 1963. The Court, being advised in the premises, after considering the pleadings and evidence herein, and the matter having come on for pretrial hearing, at which defendant failed to appear, the defendant now, therefore, being found in default, and the Court considering all the facts and circumstances, makes and files its further findings and conclusions, as follows:

I.

FINDINGS OF FACT

1.

The jurisdiction of this Court is invoked under the provisions of Part II of the Interstate Commerce Act, (49 U.S.C.

§ 322(b)). The plaintiff seeks to enjoin and restrain the defendant from transporting automobiles, in driveaway service, in interstate commerce, for compensation, as a common or a contract carrier, without having been issued to him a certificate of public convenience and necessity or a permit by the Commission authorizing him to engage in such operations or business.

### 2.

Defendant maintained an office and place of business in the City of Atlanta, Fulton County, Georgia, and was engaged in the "driveaway" business since approximately April, 1962.

### 3.

Defendant advertised his business to the general public, prior to the issuance of the temporary injunction herein. He utilized the local newspapers, the yellow pages of the telephone directory, and automobile association publications in soliciting his "driveaway" business and, additionally, solicited such business by word of mouth and by making calls on potential customers. Representations were thus made by the defendant to "Ship Your Car" for "Reasonable Rates" by "Bonded Drivers" to or from any city U.S.A.", and that there would be furnished "automobile delivery to or from any city in the United States", "for low rates", "insured service". Defendant further held himself out to be, and in fact was, a franchisee of Atlantic-Pacific Drive-Aways, Inc., of Beverly Hills, California.

### 4.

Defendant prepared and furnished all the utilized business forms and contracts in the "driveaway" transportation as follows: (1) "Receipt for Car"; (2) "Ownership Authorization"; and (3) "Driver's Signed Statement to Car Owner & (reverse side) Temporary Driving Contract". The forms, conditions and terms therein were dictated and composed by the defendant. Substantially, the arrangements in any given transaction are between the defendant and the car owner and between the defendant and the driver. The usual method of operation by which defendant transacted his business began with an inquiry, resulting from one or more of the above forms of solicitation by defendant, by a motor vehicle owner concerning defendant's services. The owner of said vehicle, upon deciding to utilize defendant's services, would deliver his motor vehicle to the defendant and a receipt therefor would be signed by the owner and the defendant. The vehicle so delivered would be accepted only with a full tank of gasoline provided for by the owner. The owner would then sign, along with the defendant, the "Ownership Authorization" authorizing the defendant as the owner's "agent" to "locate and screen a driver" for the owner and in the owner's behalf "to deliver my said automobile" to a given destination, said driver to be "deemed to be an independent contractor". The defendant was then paid $50.00 by said owner "as a fee for locating and screening" said driver and agreed to assume liability for any damage to the owner's automobile due to the negligence of the driver up to $50.00. The defendant then obtained a driver, usually by advertising in the newspapers. The driver would then deposit with the defendant as the owner's "agent" the sum of $50.00 as "cash bond" to provide for the safe delivery of the vehicle to its owner. This was in accordance with a "Driver's Signed Statement to Car Owner". The driver thus further agreed to pay for all minor repairs in transit up to $25.00 and in case of an accident or major repair agreed to contact the owner. The driver further agreed to release the owner and the defendant from any claim of liability on the part of the driver. The driver was finally reimbursed his $50.00 deposit by the owner upon satisfactory delivery of the vehicle, less deductions up to said $50.00 for any damages or losses not covered by the owner's insurance. The agreement signed by the owner and driver is an attempt to make it appear that the driver is in privity with the owner rather than with the defendant.

**5.**

The fees charged by the defendant varied and related to the distance traveled.

**6.**

The defendant does not provide personal injury and property damage insurance and expressly disclaimed to assume such obligation at the time of his initial arrangement with the vehicle owner.

**7.**

All of the arrangements for the transportation, including compensation for the movement and details as to delivery, are performed by the defendant by execution of the various documents with a potential customer who is usually a motor vehicle owner. After locating a driver to operate the motor vehicle, the defendant advises the driver of his duties and circumstances under which the motor vehicle is to be transported.

**8.**

A typical instance of the transportation provided by the defendant involved the movement of a vehicle owned by one Leo Frank on April 13, 1962. Mr. Frank arranged with the defendant to have his automobile delivered from Atlanta, Georgia, to Miami, Florida. Upon delivery of the car to the defendant, Frank paid him $50.00. One Herman Pagels was then selected and provided by defendant to drive this automobile and the car was turned over to him to drive under a temporary driving "contract" signed by Mr. Frank and Mr. Pagels. Upon delivery of the car to Pagels, Pagels paid to the defendant $50.00, for which Pagels was reimbursed by Mr. Frank upon delivery of the car in Miami. Defendant received a total of $100 for his services in connection with the delivery of this car to Mr. Frank from Atlanta to Miami.

**9.**

Defendant contends that his business undertaking is in the nature of a driver employment agency in seeking out and screening drivers for motor vehicle owners and that he is not a common carrier or a contract carrier as defined in the Interstate Commerce Act and, therefore, is not subject to the Commission's jurisdiction.

**10.**

Defendant does not possess, nor has he possessed, a certificate of public convenience and necessity, a permit or any other authority issued by the Interstate Commerce Commission authorizing him to engage in such operations or business.

**11.**

The defendant intends to and will in the manner and form aforesaid, or otherwise, continue to engage in a driveaway service involving the delivery of automobiles moving in interstate commerce without having first obtained from the Commission a certificate as a common carrier or a permit as a contract carrier authorizing him to engage in such operations and business unless restrained by this court.

**II.**

CONCLUSIONS OF LAW

**1.**

This court has jurisdiction over the subject matter and of the defendant under and by virtue of the provisions of Part II of the Interstate Commerce Act (49 U.S.C. § 301 et seq.), and particularly under Section 222(b) thereof, (49 U.S.C. § 322(b)) and the general laws and rules relative to suits in equity.

**2.**

Part II of the Interstate Commerce Act is a highly remedial statute, and its terms are broadly comprehensive enough to bring within them all of those who, no matter what form they use, are in substance engaged in the business of transportation of property on the public highways for hire, (Georgia Truck System, Inc. v. Interstate Commerce Commission, 5 Cir., 123 F.2d 210). The Act being a remedial statute, it should be liberally interpreted to effect its evident purpose. (McDonald v. Thompson, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. 164; Piedmont & N. Ry. Co. v. Interstate Com-

merce Commission, 286 U.S. 299, 52 S.Ct. 541, 76 L.Ed. 1115).

### 3.

The documents, agreements and contracts utilized by defendant appear to be designed to avoid the application of the provisions of the Interstate Commerce Act to the transportation performed and they are of no legal effect wherein the terms are in contradiction to the facts.

### 4.

The fact that the charges for the service is related to the distance traveled, discredits the contention that the rate charged is for screening a driver.

### 5.

The advertisements of the defendant constitute a holding out of an automobile transportation service within the meaning of Section 203(a) (14) of the Interstate Commerce Act, Part II, (49 U.S.C. § 303(a) (14)).

### 6.

There is an active concurrence or privity of contract between the owner of each automobile and the defendant, in the consummation of any one transaction. Although it is made to appear that the owner contracts with the driver for the transportation and delivery of his car, the initial terms and conditions surrounding each movement are prescribed by defendant with each individual owner. The defendant by his holding out, as well as by his verbal representations to each owner, undeniably establishes an expectation on the part of the owner that the defendant assumes to perform a transportation service. The owner accepts the defendant's terms and conditions, turns over to defendant his property and pays the defendant his quoted charge. The defendant assumes the right, power and duty to perform the service within the scope of his holding out.

### 7.

A driver is necessary to accomplish the terms of defendant's holding out. In order to accomplish this purpose, the drivers are not only selected by the defendant, but must necessarily be under his control during the course of transportation. The drivers receive their instructions from the defendant and they look to the defendant as their employer. A special effort is made by the defendant to bring together the owner and the driver at the point of origin but the court considers this is to be nothing more than a calculated maneuver to make it appear that the defendant has rendered only a driver "screening" service and that the contract of driving has been entered into between the owner and the driver. Insofar as any individual trip is concerned, the driver is an agent or employee of the defendant and his employment during such time is under the supervision and control of the defendant.

### 8.

For each automobile transported the defendant charges and receives a definite sum of money from the owner thereof, and the receipt of such money is compensation within the meaning of Part II of the Interstate Commerce Act.

### 9.

The defendant furnishes substantially all of the facilities for, and performs substantially all of the functions of transporting automobiles for individual owners, in driveaway service, in interstate commerce, for compensation, and is a common carrier by motor vehicle as defined in Section 203(a) (14) of the Interstate Commerce Act, Part II, (49 U.S.C. § 303(a) (14) ). Such operations are subject to the certificate provisions of Section 206(a) of the Act (49 U.S.C. § 306(a) ). Interstate Commerce Commission v. Dudgeon, D.C.Cal., 213 F. Supp. 710, aff'd. without opinion, 9 Cir., Nov. 16, 1962; cert. den. 372 U.S. 960, 83 S.Ct. 1015, 10 L.Ed.2d 13.

### 10.

The acts of the defendant constitute violations of Section 206(a) of the Interstate Commerce Act, (49 U.S.C. § 306 (a)), and as such, are subject to be enjoined by this court under the express

provisions of Section 222(b) of said Act. (49 U.S.C. § 322(b)).

The permanent injunction as prayed for in the complaint of plaintiff is hereby entered accordingly.