INTERSTATE COMMERCE COMMIS-
SION, Plaintiff-Appellant,

v.

AAA CON DRIVERS EXCHANGE, INC.,
Irving Zola and Helen Zola, and AAA
Con Drivers Exchange-L. A., Inc., De-
fendants-Appellees.

No. 267, Docket 29266.

United States Court of Appeals
Second Circuit.

Argued Dec. 18, 1964.

Decided Jan. 20, 1965.

---

Seymour Glanzer, New York City (Bernard A. Gould, Washington, D. C.; Arthur L. Tepper, New York City), for plaintiff-appellant.

Harold Harper, New York City (Harper & Matthews, New York City, Vincent P. Uihlein, New York City, of counsel), for defendants-appellees.

Before FRIENDLY, HAYS and MARSHALL, Circuit Judges.

FRIENDLY, Circuit Judge:

AAA Con Drivers Exchange, Inc. operates what it asserts to be an employment agency bringing together the owners of automobiles who want them driven from one part of the country to another and persons who want to drive them in order to get a cheap trip. The Interstate Commerce Commission considers the operation to be a common carrier transportation service, unlawful because not certificated under the Motor Carrier Act. Judge Bryan, in the District Court for the Southern District of New York, agreed with AAA Con and dismissed the Commission's complaint for an injunction under 49 U.S.C. § 322(b). The Commission appeals.[1]

1. Since the action was brought by the Commission rather than by the United States, the appeal was properly taken to this court and not to the Supreme Court under 49 U.S.C. § 45. See Piedmont & No. Ry. v. ICC, 286 U.S. 299, 52 S.Ct. 541, 76 L.Ed. 1115 (1932); United States v. New York, N. H. & H.

Recognizing the case to be close to the line, we think it fell on the forbidden side.

The Commission has little quarrel with the findings of fact made in Judge Bryan's usual thorough fashion. We shall present a condensed version:

AAA Con obtains inquiries from automobile owners primarily as a result of listings and advertisements in the newspapers and in the classified section of the telephone directory. A sample, from the Manhattan directory, contains a box, under the heading "Automobile & Truck Transporting," with a larger advertisement making substantially the same representations. These include statements that "Certified & Bonded Drivers" are "Available to Drive Your Car to and from Anywhere in the U. S. A." with "Low Rates," "Bonded Drivers," "Door to Door Service" and "Branch Offices." Another form of the advertisement said that service was "Guaranteed and Assured."

On making an inquiry, the owner indicates the destination of his car. AAA Con tells him it will attempt to obtain a driver and gives an estimate of what he will have to pay the driver. Either with or without discussion the amount is then fixed, whereupon AAA Con sends the owner a form letter offering to provide him "with a BONDED, LICENSED, and REGISTERED DRIVER who will follow your instructions and deliver your car to any point in the United States." The letter states the destination and the amount agreed, which is inclusive of gasoline, oil and other driver's expenses en route. Part is to be paid directly to the driver at the beginning of the trip and the balance at destination. AAA Con disclaims any responsibility for the transportation or delivery of the automobile. Enclosed with the letter is an "Automobile Ownership Authorization Order" with blank spaces for the name, address and telephone number of the owner, the desti- nation, a description of the automobile, the date when the driver is to be available, and the amount to be paid him at the starting point and at destination. It authorizes AAA Con to process a driver to drive the car "as per * * * owner's] instructions" and guarantees that the vehicle is fully insured. The owner acknowledges his understanding that the driver is not an agent of AAA Con, and that the latter's sole function and responsibility are the screening of drivers and not the transportation or delivery of the automobile. The owner fills in this form, signs it and mails one copy to AAA Con.

AAA Con also receives inquiries from persons able to drive cars who are looking for an inexpensive means of getting about. Assuming that a car to the desired destination and at an appropriate date is available, AAA Con, if satisfied with the prospective driver's general appearance, will indicate what the owner will pay him and what he must pay AAA Con. If this is satisfactory, the driver fills out a "Driver's Application for Casual and Reciprocal Transportation," which has blanks for the date, his name, his temporary and permanent address and telephone number, the date he is willing to leave, his driver's license and social security number, and much other data. It is agreed that if his application is accepted, the driver will pay AAA Con its fee, and that AAA Con will send him to an owner who wants a car driven to the desired place at the desired time. The driver undertakes to pick up the car and drive it to the destination without carrying any paying passengers. He certifies that he is a bona fide traveller seeking casual and reciprocal transportation and not an agent or employee of AAA Con, whose only function is stated to be "to bring * * * [him], a driver, and a car owner together." He then swears to the application and signs it, and his photograph and thumb prints are affixed.

R. R., 276 F.2d 525, 541 (2 Cir.), cert. denied, Tri-Continental Financial Corp. v. United States, 362 U.S. 961, 80 S.Ct. 877, 4 L.Ed.2d 876 (1960).

If AAA Con's investigation satisfies it that the applicant is reliable, he then pays the agreed fee, is given a "Driver's Conditional Receipt," is informed of the name, address and telephone number of the owner, and is told to get in touch with the latter. He receives two copies of an "In Transit Permit," a sample of which had been sent the owner with AAA Con's initial communication. This has his photograph and thumb prints affixed.

When the driver meets the owner, the owner looks him over and he looks the car over. If both are satisfied, they complete the "In Transit Permit," one copy being retained by the driver and the other by the owner. This authorizes the driver to drive the car to the destination and to make any necessary repairs en route up to $10; any repairs over that amount are to be made only after notification to the owner and pursuant to his instructions. The Permit provides that in case of any accident or damage the owner may retain the unpaid portion of the driver's fee as liquidated damages. The driver agrees to comply with traffic regulations, to follow the owner's specific instructions, to notify the owner in case of accident or delay, to pay for all gasoline and oil, not to carry any passengers for hire or to use the car for towing or trucking, and not to carry liquor, narcotics or anything in violation of law. It provides also that the driver is not an agent of AAA Con but an independent contractor and a bona fide traveller seeking casual and reciprocal transportation. The driver assumes all responsibility for injury to himself or any other person riding in the automobile and for any traffic fines. Upon signature the owner pays the driver the first instalment of the agreed amount, the driver drives the automobile to destination, and is then paid the balance owed him by the owner or his representative. If an owner has inquired about insurance, AAA Con will furnish him with an application, supplied to it by an insurance company, for trip liability and property

insurance; if the owner wishes such insurance, he signs the application and sends it with the premium to the insurance company.

Owners' payments to drivers and drivers' fees to AAA Con bear no fixed relation to one another, or to the distance to be traversed; depending on supply and demand, a driver may make a profit out of the trip, may break even or may have to spend some of his own money.

Because the Motor Carrier Act deals with contract carriers, who must have permits, as well as with common carriers, who must have certificates, its prohibitions against unlicensed operation are considerably more complex than those added to the Interstate Commerce Act as § 1(18)–(22) by Transportation Act, 1920, 41 Stat. 477. The general prohibition, contained in § 203(c), 49 U.S.C. § 303(c), is that:

"Except as provided in section 202 (c), section 203(b), in the exception in section 203(a) (14), and in the second proviso in section 206(a) (1), no person shall engage in any for-hire transportation business by motor vehicle, in interstate or foreign commerce, on any public highway or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such person a certificate or a permit issued by the Commission authorizing such transportation * * *."

The provision requiring certificates for common carriers is § 206(a) (1), 49 U.S.C. § 306(a) (1):

"Except as otherwise provided in this section and in section 210a, no common carrier by motor vehicle subject to the provisions of this part shall engage in any interstate or foreign operations on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience

and necessity issued by the Commission authorizing such operations * * *."

The circle here relevant is completed by the definition in § 203(a) (14), 49 U.S.C. § 303(a) (14):

"The term 'common carrier by motor vehicle' means any person which holds itself out to the general public to engage in the transportation by motor vehicle in interstate or foreign commerce of passengers or property or any class or classes thereof *for compensation,* whether over regular or irregular routes * * *."

■ It is too late to argue, and AAA Con does not, that a transportation service is immunized from the prohibitions of §§ 203(c) and 206(a) (1) of the Motor Carrier Act by the mere fact that the only thing being transported is a motor vehicle which itself furnishes the motive power. The problem seems first to have arisen in connection with the delivery of new automobiles. The Commission early took the position that delivery of a single car under its own power was no less "transportation" than was the use of one car for towing or carrying others. See, e. g., Fleming Common Carrier Application, 8 M.C.C. 469, 470 (1938), modified, Alton R. R. v. United States, 36 F.Supp. 898 (E.D. Mich.1941), aff'd, 315 U.S. 15, 62 S.Ct. 432, 86 L.Ed. 586 (1942); Lord Contract Carrier Application, 34 M.C.C. 549, 550–51 (1942). Later the Commission extended the principle thus established to cases where the *motor vehicle was not being transported for sale* but merely for the convenience of an owner, see Automotive Shippers, Inc., Common Carrier Application, 64 M.C.C. 475 (1955), and it has been sustained in this position by a number of court decisions, of which it is sufficient at this point to cite ICC v. Interstate Auto Shippers, Inc., 214 F.Supp. 473 (S.D. N.Y.), aff'd per curiam, 323 F.2d 367 (2 Cir.1963). But none of this settled doctrine decides whether or not a particular "driveaway" operation is a "for-

hire transportation business by motor vehicle" within § 203(c) or common carriage by motor vehicle within § 206 (a) (1).

Since 1200 motor vehicles a year are moved under AAA Con's auspices and the activity is hardly eleemosynary, it would seem rather obvious that a "for-hire transportation business by motor vehicle" *is being conducted by someone.* AAA Con says it is conducted solely by the drivers. If that be so, the matter would be at an end, since § 203(b), one of the sections listed in the "Except as provided" prefix to § 203(c), exempts from the Act, with a qualification not here material, "(9) the casual, occasional, or reciprocal transportation of passengers or property by motor vehicle * * * for compensation by any person not engaged in transportation by motor vehicle as a regular occupation or business," and, in contrast to United States v. Drum, 368 U.S. 370, 82 S.Ct. 408, 7 L.Ed.2d 360 (1962), the record is clear that the drivers here are not so engaged. But there was nothing "casual, occasional, or reciprocal" in AAA Con's operation, and § 203(b) (9) does not assist if it also was engaged in for-hire transportation.

As said by Mr. Justice Brennan in United States v. Drum, supra, 368 U.S. at 375–376, 82 S.Ct. at 411, "The problem is one of determining—by reference to the clear but broad remedial purpose of a regulatory statute committed to agency administration—the applicability to a narrow fact situation of imprecise definitional language which delineates the coverage of the measure." While the Drum decision dealt with a different although not wholly unrelated issue, the approach taken by the Supreme Court in that case—approval of the Commission's looking through form to substance, of its dealing with a "novel situation as an integral and unique problem in judgment," 368 U.S. at 384, 82 S.Ct. at 415, and of its resolving doubts so as to accomplish the basic purpose of the Motor Carrier Act—calls for reversal here.

The definition of "common carrier by motor vehicle" in § 203(a)(14) stresses not what a person does but what he holds himself out to do. Holding out is important not only because of the significance historically given to it but because, even if the performance does not match the promise, the latter may have the adverse effect on "existing carriers upon whom the bulk of shippers must depend for access to market" which underlines the requirement of a certificate or permit. United States v. Drum, supra, 368 U.S. at 374–375, 82 S.Ct. at 410. Nothing in AAA Con's advertisements disclosed the features now stressed as showing it was to be a mere intermediary between owner and driver. For all that appeared in them, AAA Con would set and collect the rates and furnish and pay the driver; indeed, that is precisely the impression the advertisements give and must have been intended to give. When we proceed from the advertisements to the facts concerning AAA Con's operation, we find these likewise irreconcilable with AAA Con's image of itself. AAA Con, not the driver, fixes the rate the owner must pay, and the higher this is, the more AAA Con can get from the driver. It thus has every bit as much interest in the transportation payments as if it collected these from the owners and paid the drivers out of them, as in the Automotive Shippers, Inc. case, supra, 64 M.C.C. at 476, and its position differs from that of an employment agency which collects a fixed fee, a percentage of the salary fixed by the employer for the employee, or a combination of the two. Moreover, AAA Con sets all the terms of the relationship; the driver and the owner do not make their own arrangements, as would normally be done between employer and employee. We cannot say that one who holds himself out and acts as AAA Con has done has effectively placed himself beyond a rational construction of the prohibitory language of the statute, which Congress entrusted the Commission to administer. Yet we would have to go that far to sustain the judgment of the district court. Gray v. Powell, 314 U.S. 402, 411–413, 62 S.Ct. 326, 86 L.Ed. 301 (1941); NLRB v. Hearst Publications, Inc., 322 U.S. 111, 130, 64 S.Ct. 851, 88 L.Ed. 1170 (1944); NLRB v. Coca-Cola Bottling Co., 350 U.S. 264, 269, 76 S.Ct. 383, 100 L.Ed. 285 (1956).

AAA Con makes much of a dictum by Division 1 in the Automotive Shippers, Inc. case, supra, 64 M.C.C. at 481, that: "Assuming, improbable as it seems, that all drivers whose services are arranged for by applicant are bona fide travelers, who are not engaged in transportation as a regular business, do not receive any compensation other than the use of the car, and do not carry passengers for hire, then applicant's operation would appear to require no authority from this Commission." But it is scarcely denied that the statement was erroneous as applied to the facts of that case where Automotive Shippers collected directly from the owner, since the dictum confused the status of the driver—who indeed would be exempted by § 203(b)(9) on the facts indicated in the quotation—with that of the enterprise that hired him; and the Division lost little time in retracting its error and setting things straight. AA Auto Delivery, Inc., Common Carrier Application, 77 M.C.C. 365, 372–73 (1958). We have been pointed to no decision in which the Commission ever gave effect to the quoted dictum. On the contrary, in AA Auto Delivery, Inc., supra, and in Service Associates, Inc., Investigation of Operations, 89 M.C.C. 33 (1962), it required certification where the drivers were just as "casual" as here.

AAA Con endeavors to distinguish a considerable number of judicial decisions which have granted injunctions against uncertificated driveaway services or refused to enjoin cease and desist orders of the Commission with respect to them. Thus, it notes that in the case in this circuit, ICC v. Interstate Auto Shippers, Inc., supra, 214 F.Supp. 473, aff'd per curiam, 323 F.2d 367, the service was made the owner's agent, specified the

route, and altogether exercised a greater degree of control than AAA Con. It points out that in ICC v. Dudgeon, 213 F.Supp. 710 (S.D.Cal.1961) (9 Cir.), cert. denied, 372 U.S. 960, 83 S.Ct. 1015, 10 L.Ed.2d 13 (1963), the service gave instructions as to the highways to be traversed, the miles to be traveled, the date of delivery, and any mechanical peculiarities or requirements of the car; that in Orleman v. United States, 219 F.Supp. 945 (E.D.Mich.1963), the service often signed contracts in the owner's name and delivered the automobile to the driver, regularly instructed the driver to make oil changes, and gave him a postcard to mail back at the halfway mark; that in ICC v. Teeter, 228 F. Supp. 479 (N.D.Ga.1964), the owner would deliver his car to the service rather than directly to the driver; and that in Spencer v. United States, 236 F.Supp. 230 (N.D.Ohio, 1964), part of the fee was paid directly to the service, which also had given the driver more instructions than here.

■ Everything said by AAA Con's counsel with respect to these decisions is precisely correct, and we readily agree that AAA Con made a more expert endeavor to take itself out of the reach of the statute than these other services had done. But the question is not whether AAA Con's operation is different from these others, but whether it is so different as to require the Commission to treat it differently. "We deal in totalities; indicia are instruments of

decision, not touchstones," United States v. Drum, supra, 368 U.S. at 384, 82 S.Ct. at 415. We are convinced that the Commission rationally could and its decisions show us that it would conclude that, after all the shearing was over, AAA Con still led its customers to believe that it, and not simply the drivers, was getting their cars from one place to another and that it was not acting merely as an employment agency. We wholly agree that AAA Con is not obliged to conduct its operations in such a fashion that it must get a certificate. But Mr. Justice Holmes' famous words fit the case rather well: "We do not speak of evasion, because, when the law draws a line, a case is on one side of it or the other, and if on the safe side is none the worse legally that a party has availed himself to the full of what the law permits. When an act is condemned as an evasion, what is meant is that it is on the wrong side of the line indicated by the policy if not by the mere letter of the law." Bullen v. Wisconsin, 240 U.S. 625, 630–631, 36 S.Ct. 473, 474, 60 L.Ed. 830 (1916).

We therefore reverse the judgment dismissing the complaint and direct the district court to issue an injunction. We leave it in Judge Bryan's sound discretion to decide, after appropriate hearing, whether the injunction should be stayed if AAA Con promptly files an application for a certificate and diligently prosecutes this.[2]

2. We are unable to share AAA Con's fears that an application for a certificate is sure to be denied, presumably on the ground that its unlawful operations show it not to be "fit." The Commission has not regarded such operations as a bar if these were conducted in a not unreasonable belief as to their legality—a test rather clearly satisfied when they have passed muster in the reasoned view of a district judge. See, e. g., Moyer Common Carrier Application, 83 M.C.C. 83 (1960). Cf. Bowman Transp., Inc. v. United States, 211 F.Supp. 354 (N.D.Ala. 1962).