**CHEMICAL LEAMAN TANK LINES, INC., Plaintiff,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, Defendants,**

and

**Brown Brothers Express, Inc. (Peerless Transport Corp.), Intervening Defendant.**

**Civ. A. No. 3560.**

United States District Court
D. Delaware.
April 22, 1969.

Arthur F. DiSabatino, of Killoran & Van Brunt, Wilmington, Del., Leonard A. Jaskiewicz and J. William Cain, Jr., of Grove, Jaskiewicz & Gilliam, Washington, D. C., for plaintiff.

Alexander Greenfeld, U. S. Atty., Wilmington, Del., Edwin M. Zimmerman, Asst. Atty. Gen., and John H. D. Wigger, Washington, D. C., for the United States.

Robert W. Ginnane, Gen. Counsel I.C. C., and Steven Kazan, Washington, D.C., for Interstate Commerce Commission.

H. James Conaway, Jr., of Young, Conaway, Stargatt & Taylor, Wilmington, Del., J. G. Dail, Jr., of Croft & Dail, and Chester A. Zyblut, Washington, D. C., for intervening defendant.

## OPINION

Before SEITZ, Circuit Judge, and WRIGHT and LAYTON, District Judges.

LAYTON, District Judge.

This is an action brought by Chemical Leaman Tank Lines, Inc. (Chemical Leaman), a motor carrier, subject to Part II of the Interstate Commerce Act, 49 U.S.C., to enjoin, set aside, vacate and annul certain orders of the Interstate Commerce Commission. The orders challenged are (1) that of Division I denying six motor carriers,[1] the plaintiff among them, leave to file a petition for reconsideration, reopening or further hearing, with regard to a motor carrier certificate issued to Brown Brothers Express; (2) that of Division I, acting as Appellate Division, affirming the

---

1. Coastal Tank Lines, O'Boyle Tank Lines, Chemical Leaman Tank Lines, Inc., Mat- lack, Inc., Maxwell Co., and Refiners Transport & Terminal Corporation.

action of Division I and; (3) that of the Commission denying a finding that an issue of general transportation importance is involved. The action is before a three-judge court convened pursuant to §§ 1336, 1398, 2284, 2321 through 2323 (inclusive) and § 2325 of the Judicial Code, 28 U.S.C. Peerless Transport Corporation (Peerless), as successor in interest to Brown Brothers Express (Brown), was granted leave to intervene.[2]

In January, 1958, the Interstate Commerce Commission, on its own initiative, instituted conversion proceedings pursuant to § 212(c) of the Interstate Commerce Act, 49 U.S.C. § 312(c), to determine whether Brown's contract carrier permits should be revoked and a certificate authorizing operation as a motor carrier issued in their stead.[3] Shortly thereafter, Brown filed an application for a motor carrier certificate authorizing operations corresponding to its then existing contract carrier permits. Chemical Leaman and other motor carriers filed protests. The entire matter was referred to an examiner for appropriate proceedings and for a recommended report and order. No oral hearing was held. Based upon the verified statements in the record, the examiner found that Brown's operations did not conform to the definition of a contract carrier, that the operations were those of a motor carrier, and that the operations were "otherwise lawful."[4] Accordingly, the examiner recommended that an ap-

propriate certificate issue in lieu of the permits. No exceptions were filed by the protestants. At the expiration of the time for filing exceptions, the examiner's recommended report and order became the Report and Order of the Commission. A Certificate of Public Convenience and Necessity issued in due course on June 7, 1960.[5]

The contract carrier permits held by Brown included two separate grants of authority. One permit authorized Brown to perform contract carrier service for enumerated commodities between Curwensville, Pennsylvania, on the one hand, and points in eight designated states, on the other. Another permit gave a radial grant of authority to perform a similar service for the same commodities between Curwensville, Pennsylvania, and points in twelve other designated states. The certificate which issued in June, 1960, recited, in separate respective paragraphs, the language of each of the permits previously held by Brown.

As a contract carrier, it is undisputed that Brown could not, and indeed had never, combined or "tacked"[6] its separate operating rights at Curwensville, Pennsylvania, in order to provide a through service between an authorized point in the eight states and an authorized point in the twelve states. For some six or seven years after Brown was authorized to perform a motor carrier operation, neither Brown nor its successor, Peerless, attempted to tack the

2. Through a series of purchases beginning in March, 1966, Brown Brothers Express was acquired by Peerless Transport Corporation, which now operates under the authority formerly held by Brown Brothers Express.

3. "In 1957, at the behest of the Commission, the Congress amended the statutory definition of a contract carrier, § 203(a) (15) of the Interstate Commerce Act * * *."

"In order to protect existing contract carrier permits, Congress enacted § 212 (c) which * * * provided for the revocation of such a permit in appropriate proceedings before the Commission and the issuance of a common carrier

certificate." United States v. J. B. Montgomery, Inc., 376 U.S. 389, 391, 392, 84 S.Ct. 884, 886, 11 L.Ed.2d 797 (1964).

4. 49 U.S.C. § 312(c).

5. Docket No. MC–108456 (Sub–No. 10), Reassigned No. MC–119689.

6. "Tacking" is the joining of separate grants of authority by routing shipments through a point common to the separate authorities so as to provide a through carrier service between the territory served under one authority and that served under another and separate authority.

separate operating rights. However, in August, 1966, Peerless filed a new tariff which, in effect, declared that henceforth it would tack its separate operating rights so as to provide a through service.

Plaintiff, after being apprised of this fact, petitioned the Commission for leave to intervene and leave to file a petition for reopening and reconsideration of the Brown certificate in order to have the Interstate Commerce Commission incorporate a tacking restriction into the Brown, now Peerless, certificate.

The action now before this Court is limited to a review of the Commission orders denying plaintiff leave to file its petition. It is well settled that a petition for reconsideration—and so, *a fortiori*, a motion for leave to file such a petition—is committed to the discretion of the Commission. In order to find an abuse of discretion, plaintiff's allegations, if proven, must require the Commission to reverse its prior decision.[7] Carolina Scenic Coach Lines v. United States, 59 F.Supp. 336 (W.D.N.C., 1945) aff'd per curiam, 326 U.S. 680, 66 S.Ct. 37, 90 L.Ed. 398 (1945). The plaintiff charges that the Commission exceeded its statutory authority by issuing a conversion certificate to Brown without imposing a restriction against tacking. If established, plaintiff's allegation is of sufficient gravity to entitle it to relief.

The basis for plaintiff's attack on the Commission's orders is its contention that § 312(c) requires the imposition of a tacking restriction.[8]

The Commission and Peerless maintain that § 312(c) does not demand a tacking restriction. To the contrary, they contend that "action with respect to the preservation or elimination of inherent limitations on contract-carrier operations was left to the judgment of the Commission". In addition, the defendants urge that this particular plaintiff is barred on equitable grounds from questioning Peerless's certificate. The equitable defenses are (1) that plaintiff failed to exhaust its administrative remedies in 1960, (2) that Peerless, an innocent purchaser of the certificate, has relied on the certificate as issued and, therefore, plaintiff is now estopped from challenging the scope of the operations authorized therein, and (3) that the plaintiff is guilty of laches.

The narrow question which is dispositive of the legal issues is whether § 312(c) requires the Interstate Commerce Commission to impose a tacking restriction in conversion certificates. In pertinent part, the statute provides:

"The Commission shall examine each outstanding permit and * * * after notice and hearing revoke a permit and issue in lieu thereof a certificate of public convenience and necessity, if it finds, first, that any person holding a permit whose operations on August 22, 1957, do not conform with the definition of a contract carrier in section 303(a) (15) of this title as in force on and after August 22, 1957; second, are those of a common carrier; and third, are otherwise lawful. Such certificate so issued shall authorize the transportation, as a common carrier, of the same commodities between the same points or within the same territory as authorized in the permit."

The critical language is:

"Such certificate so issued shall authorize the transportation, as a common carrier, * * * between the same points or within the same territory as authorized in the permit."

Plaintiff contends, citing T. T. Brooks Trucking Company, Incorporated, Conversion Application 81 M.C.C. 561

---

7. In the circumstances of this case, we are not called upon to decide the extent to which the allegations must be colorable.

8. The plaintiff has also alleged that this Court should set aside the Commission orders because the omission of the tacking restriction from the Peerless certificate was a ministerial or inadvertent error. We are not called upon to decide the merits of this argument in light of our disposition of what we understand to be plaintiff's main contention.

(1959), that because a contract carrier could not tack under his permit, in order to authorize "transportation * * * between the same points * * * as authorized in the permit," the certificate must include, expressly or by construction, a prohibition against tacking. The defendants take the position that the phrase "transportation, as a common carrier" contemplates the right to tack because common carriers have traditionally enjoyed this right. Further, defendants suggest that the Commission's decision in Brooks merely announced Commission policy, and that it did not confirm a statutory mandate.

 As a contemporaneous interpretation of the statute by the administrative body charged with its enforcement, the Brooks decision is entitled to particular weight.[9] Tar Asphalt Trucking Co. Inc. v. United States, 208 F.Supp. 611 (D.N.J., 1962) aff'd per curiam, 372 U.S. 596, 83 S.Ct. 948, 9 L.Ed.2d 976 (1963). This is especially true here inasmuch as the very question of statutory construction now before this Court was fully aired in Brooks before the Commission. Concededly, and as the defendants urge, the Brooks decision contains some language which arguably limits its holding to a declaration of Commission policy. We believe, however, that the holding of Brooks is more compelling; that it is a statement by the Commission that § 312(c) requires the imposition of a tacking restriction in all conversion certificates.

Drawing upon legislative history, earlier analogous legislation, prior Commission opinions, court decisions and its own expertise, the Commission determined in Brooks that § 312(c) is a "grandfather provision", the purpose of which is to assure "substantial parity" between the operating rights to be conferred in the conversion certificate with those contained in the formerly held permit. In addition, the Commission said that in the context of § 312(c), the application of the "substantial parity" test means that the operating authority in the conversion certificate is to be as broad as that in the permit, but no broader than is necessary to assure that the carrier's authority has not been lessened by the conversion proceeding.

The bases of these determinations are that the Congress, as reflected in the House and Senate Reports, considered the certificates to issue pursuant to § 312(c), "in the nature of grandfather certificates," and that in the past, and in particular under the Motor Carrier Act of 1935, "grandfather" provisions had been read to assure " 'a substantial parity between future operations and prior bona fide operations.' " Here, however, because the language of the statute "speaks primarily of 'operating authorities,' as distinguished from 'actual motor carrier operations,' " the Commission concluded:

"* * * the so-called 'grandfather' clause contained in § 212(c) [10] should be administered on the basis of a 'substantial parity' test with respect to the conversion of *operating authorities* involved therein." (Emphasis in the original.)

The Commission next applied the "substantial parity" test, as just articulated, to the question at hand, that is, whether a tacking restriction is required in the conversion certificate to assure "substantial parity" with the authority formerly held under the *contract carrier* permit. Under the permits, the Commission noted, the holders could not tack "separate segments of their operating authorities at common service points in order to perform a through service," [11]

---

9. In Brooks, the Commission consolidated ten, apparently representative, conversion proceedings so that it could express its opinion on the major issues presented in such proceedings, including its view on the question of tacking restrictions involved here.

10. § 212(c) of the Interstate Commerce Act is § 312(c) in 49 U.S.C.

11. The basis for the Commission's statement is a substantial body of Commission opinions and court decisions, some of which are cited at page 572 of the Brooks opinion.

Further, in its expertise, the Commission found that:

"* * * to authorize a converted carrier to perform a through service over a combination of its present routes would be akin to authorizing the transportation, as a common carrier, of traffic between points or territories not previously authorized by that carrier's permits. Such a result would be contrary to the wording of the statute, and would likewise be contrary to what we conceive to be the basic purpose of this provision of the legislation. * * * "

The question now is whether § 312(c) is amenable to a less restrictive reading than that given in Brooks. We think that it is not. Defendants' strongest argument is that the phrase "transportation, as a common carrier" contemplates full common carrier authority and that such authority has traditionally included the right to tack. However, defendants' argument ignores the "grandfather" nature of § 312(c); that is, the statute only authorizes a carrier to perform motor carrier services *on the basis of that carrier's prior authority* to perform specified contract carrier service, rather than on the basis of a finding of public convenience and necessity pursuant to 49 U.S.C. § 307(a). In these circumstances, the limitation inherent in the source of the conversion certificate carries over to the certificate itself unless there is a Congressional directive to the contrary. No such Congressional expression is in the record now before the Court.

Accordingly, then, we are of the view that the Commission's construction of the statute in Brooks was proper and that a less restrictive construction cannot be properly entertained.

We turn now to a consideration of the defendants' contentions that Chemical Leaman is barred on equitable grounds from questioning the Peerless certificate. First, defendants suggest that because Chemical Leaman did not file exceptions at the time of the conversion proceedings, to which it was a party, it cannot now cure its failure to exhaust administrative remedies and thus improve its position. Defendants' statement is entirely correct. However, it does not have the force which the defendants attach to it. By not exhausting its remedies in 1960, Chemical Leaman lost the right to raise certain objections to the Peerless certificate, for example, Chemical Leaman cannot argue that the Peerless certificate is not supported by substantial evidence. However, because Chemical Leaman has exhausted its administrative remedies as regards the 1967 proceedings, it can urge, as it does here, that the Commission's refusal to permit reconsideration of the Peerless certificate was an abuse of discretion because the certificate was issued contrary to law, that is, *ultra vires* the statute.[12] We conclude that this very narrow attack on the Peerless certificate is not dependent on the exhaustion of administrative remedies in 1960.

Defendants' second and third contentions are respectively, (a) that Chemical Leaman is estopped from questioning the Peerless certificate because Peerless, an innocent, good-faith purchaser of the certificate properly relied on the certificate as issued by the Commission and (b) that Chemical Leaman is guilty of laches in waiting some seven years before questioning the omission of the tacking retriction. We are unable at this time to decide the merits or the effect of either of these so-called equitable defenses. The proceedings before

---

12. To analogize to a court proceeding, a judgment entered without a proper jurisdictional base may be collaterally attacked at any time in any proceeding in the same court or in some other court where the issue of the validity of the judgment is raised. See Federal Rule Civil Procedure 60(b)(4), Moore's Federal Practice, Volume 7 at page 263, and Moore's Federal Practice, Volume 1B at page 634.

the Commission in 1967 were particularly abbreviated. The record before the Commission consists, so far as we are aware, of the joint petitions of the plaintiff and five other motor carriers, the replies by the intervening defendant Brown Brothers and, of course, the orders of the Commission denying the respective petitions. Nowhere do we find record proof of the elements on which a finding of equitable estoppel [13] or laches could be predicated. In these circumstances, where the parties have not had sufficient opportunity to make a record before the Commission, we do not decide whether the defenses are available in light of this opinion or the merits of the defenses.

The orders of the Commission denying Chemical Leaman leave to file a petition to reopen and reconsider the Peerless certificate are hereby set aside, the Commission is directed to permit the filing of the petition, and to take such further action as would be consistent with this opinion.

Submit Order.

---

13. Peerless's contention that the plaintiff is barred by the doctrine of equitable estoppel from questioning the Peerless certificate does not, as it is presently urged, make out a proper case for invoking the doctrine of equitable estoppel. Most glaring is the absence of any allegation that Peerless relied on any explicit or implicit representation of Chemical Leaman.