CHEMICAL LEAMAN TANK LINES,
INC., et al., Plaintiffs,
v.
A. J. WEIGAND, INC., Defendant.
Civ. A. No. 4504.

United States District Court,
District of Delaware.

May 31, 1973.

Daniel M. Kristol, of Killoran and Van Brunt, Wilmington, Del., Leonard A. Jaskiewicz and Ronald N. Cobert, of Grove, Jaskiewicz & Gilliam, Harry C. Ames, Jr., of Ames, Hill and Ames, Washington, D. C., Leonard R. Kofkin, of Axelrod, Goodman, Steiner & Bazelon, Chicago, Ill., for plaintiffs.

E. Dickinson Griffenberg, Jr., of Potter, Anderson & Corroon, Wilmington, Del., and Jacob P. Billig, of Billig & Jones, P. C., Washington, D. C., for defendant.

## OPINION

STAPLETON, District Judge:

Plaintiffs in this case, four certificated trucking companies, have brought this action seeking an injunction against alleged continuing violations of 49 U.S.C. § 306(a)(1) by the defendant, A. J. Weigand, Inc. (Weigand).[1] Jurisdiction is alleged under 49 U.S.C. § 322(b)(2) which provides in pertinent part:

> If any person operates in clear and patent violation of any provision of Section . . . 306 . . . of this title or any rule, regulation, requirement or order thereunder, any person injured thereby may apply to the District Court of the United States for any district where such person violating operates, for the enforcement of such section, or of such rule, regulation, requirement or order.

Defendant, asserting that jurisdiction over the matters presented in the complaint is not well founded under this Section, has moved for dismissal of the complaint under Rule 12(b) of the Federal Rules of Civil Procedure. Plaintiffs have cross moved for summary judgment asserting that there are no issues of fact to be determined and that they are entitled to judgment as a matter of law.

The administrative proceedings that have preceded this action present a somewhat complex setting for the present dispute. By application filed March 22, 1948, Weigand sought a permit authorizing the transportation of various specified commodities between described points. A contract carrier permit issued in that proceeding for the transportation (1) of such commodities as are manufactured and sold by chemical manufacturing plants (except petroleum products, in bulk, in tank trucks), from Dover, Ohio, to points in thirteen states and those in a described portion of another state, and (2) of equipment, materials and supplies used in the conduct of such business from points in the enumerated designation states to Dover.

Pursuant to Section 212(c) of the Interstate Commerce Act, 49 U.S.C. § 312(c), a proceeding was instituted on January 3, 1958 (No. MC–7768 (Sub. No. 11)), to determine whether Weigand's contract carrier permit should be revoked, and, in lieu thereof, a certificate of public convenience and necessity issued authorizing common carrier operations commensurate with those theretofore performed as a contract carrier. In this "conversion proceeding", an examiner recommended that Weigand be issued a certificate in lieu of and commensurate with its then held permits, subject to several conditions, one of which stated "that the separately stated authori-

---

1. Section 306 of Title 49 provides, in pertinent part:

   Except as otherwise provided in this section and in section 310a of this title, no common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operations on any public highway or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations. . . .

ties herein granted shall not be joined or tacked, one to another, for the purpose of performing any through transportation." [2]

The certificate that resulted from the conversion proceeding, however, did not contain the specific tacking prohibition imposed by the examiner. Involved in this proceeding is Weigand's right to tack or join together and thus provide a through service under the following two paragraphs of the certificate issued by the ICC following the conversion proceedings:

3. Such commodities as are manufactured and sold by chemical manufacturing plants (except petroleum products, in bulk, in tank cars) and returned empty containers, for such commodities when moving to or from warehouses or other facilities of chemical manufacturing plants, between Dover, Ohio, on the one hand, and on the other, points in Illinois, Indiana, Kentucky, Ohio, West Virginia, New York, Pennsylvania, Massachusetts, Rhode Island, Connecticut, New Jersey, Delaware, Maryland and the southern peninsula of Michigan; and

4. Machinery, equipment, materials, and supplies used in the business mentioned immediately above, from points in the states named immediately above to Dover, Ohio.

Weigand, by a tariff publication effective November 16, 1968, began to hold itself out to perform service throughout the fourteen state territory set forth in its certificate via a Dover gateway (that is, service between such points within those states which practicably could move through Dover, Ohio). The theory upon which this service was offered was that certain materials and supplies used in the chemical manufacturing business could move from desig-

nated points to Dover, Ohio under the authority granted in paragraph 4 of its certificate and thence could be transported from Dover, Ohio to designated points within the fourteen state area under the authority granted in paragraph 3 of the certificate if such materials and supplies were also "such commodities as are manufactured and sold by the chemical manufacturing plants."

By petition filed before the ICC on December 6, 1968, Chemical Leaman, a plaintiff herein,[3] requested that Certificate No. MC–119968 be modified so as to include an express condition preventing the separately stated authorities therein from being tacked one to another to provide any through transportation. The earlier "conversion proceeding" was reopened and consolidated with this "modification proceeding." After a hearing, the Commission's Hearing Examiner found (1) that the restriction against tacking was omitted due to inadvertent ministerial error; (2) that Weigand had shown good and sufficient cause why its certificate should *not* be modified to conform to the Hearing Examiner's report and recommended order in the conversion proceeding; and (3) that the proceeding should be discontinued. In a Report and Order of December 10, 1971, Review Board No. 3 of the Commission reversed the holding of the Hearing Examiner and found that the Weigand certificate should be modified by the imposition of a tacking restriction. A. J. Weigand, Inc., Modification of Certificate, No. MC–119968, 114 MCC 806 (1971).

By order of June 22, 1972, Division 1 of the Commission, acting as an Appellate Division, affirmed the Review Board order. This order of Division 1, in effect prohibiting Weigand from tacking the two involved paragraphs of

2. " 'Tacking' is the joining of separate grants of authority by routing shipments through a point common to the separate authorities so as to provide a through carrier service between the territory served under one authority and that served under another and separate author-

ity." Chemical Leaman Tank Lines, Inc. v. United States. 298 F.Supp. 1269, 1271 (D.Del.1969).

3. Within the following six weeks the other plaintiffs in this action joined in the Chemical Leaman petition as intervenors.

its authority, was to have become effective on August 5, 1972. On July 27, 1972, however, Weigand filed with the Commission a petition for modification of the effective date of Division 1's June 22, 1972 order. In support of its position Weigand submitted an affidavit of its President which stated facts tending to show that the cessation of the operations which would result from the order would cause the immediate ruination of Weigand and its ability to continue to conduct any operations.[4]

The express purpose of Weigand's request for a stay was to enable it to file and prosecute applications for temporary and permanent authority to permit the continuation of its present operations. By an order issued on August 4, 1972, the Commission, Division 1, acting as an Appellate Division, held:

> That the effective date of the said order of December 10, 1971, be, and is hereby, fixed as October 4, 1972, subject to the next succeeding paragraph.
>
> *It is further ordered* that if the applicant files an appropriate application for authority, to the extent Certificate No. MC–119968 is modified by the Report and Order of December 10, 1971,

on or before the effective date fixed by this Order, the said effective date shall be treated as being indefinitely postponed pending a final decision on the application.

Plaintiffs herein then asked the Commission to reconsider its grant of a stay. On March 9, 1973 the Commission, Division 1, acting as an Appellate Division, denied such petition on the ground that "the Order of August 4, 1972 was entered in accordance with law after it appeared that the effective date of the Order of December 10, 1971 should be postponed. . . ."[5] Defendant has filed an application with the Commission for permanent authority to continue the operations that it has conducted in the recent past. A. J. Weigand, Inc., Dkt. No. MC–119968 (Sub. No. 6).

Plaintiffs, who have so conscientiously pursued their rights through the administrative tribunal and who have been denied the substance of the relief for which they strove by the entry of the stay order of the Commission, now come to this forum seeking a quicker form of relief than the Commission apparently thinks is appropriate. The main thrust of the plaintiffs' argument is that para-

---

4. The affidavits supporting the petition for a stay of the effective date of the order indicated that inability to tack the two separately stated grants of authority in its certificate would result in the loss of 80% of Weigand's revenues, the idleness of 75% of Weigand's fleet, loss of employment for about 80% of Weigand's employees, and the inability to meet current debt repayment schedules which would result in the likely liquidation of the company. Additionally the petition was supported by statements from eight shippers who had been using the services of Weigand in their businesses and who asserted that those services were excellent and that they would be harmed if Weigand was unable to continue to offer such services.

5. The antagonists here have done battle additionally in an independent ICC proceeding. In Chemical Leaman Tank Lines, Inc. et al. v. A. J. Weigand, Inc., No. MC–C–6900 (Petroleum Products proceeding) the Commission's Review Board No. 3 has upheld a finding by a

Hearing Examiner that Weigand "has been engaged in the transportation of chemicals . . . without appropriate authority in violation of Sections 203(c) and 206(a)(1) of the Interstate Commerce Act. . . ." One of the bases for this finding was that the separately stated authorities contained in Weigand's certificate constituted but a single grant of authority and that it is well settled that there can be no tacking within a single grant. Under the theory of this decision, no anti-tacking prohibition need be inserted into Weigand's certificate in order to lawfully prohibit Weigand from the practice of tacking. On November 2, 1972 Review Board No. 3 of the ICC issued a decision and order affirming the Hearing Examiner's determination. This proceeding is now pending before the ICC on Weigand's petition for reconsideration of the decision and order of Review Board No. 3 and on Weigand's application to consolidate this case with the stayed modification proceeding on the theory that both cases raise similar issues and ought to be determined in a similar fashion.

graphs 3 and 4 of Weigand's certificate clearly constitute the grant of a single authority, that it is well established in ICC law that one may not tack under a single grant of authority, and that, therefore, the tacking operations presently on-going are a clear violation of Section 206(a)(1) of the Act. Further, plaintiffs argue that the Commission's stay order was not intended as authorization for continued tacking by Weigand and that if the Commission had issued an order purporting to have that effect it would constitute a "grant" of rights to the defendant without following the procedure and making the findings of public convenience and necessity required by 49 U.S.C. §§ 306, 307.

Defendant argues that there has been no "clear and patent" violation of the Interstate Commerce Act and that this Court is, accordingly, without jurisdiction under 49 U.S.C. § 322. Defendant states that under its certificate as it presently exists it is lawfully tacking separately stated grants of authority, citing, Beem-Interpretation of Certificate, 66 M.C.C. 259 (1955), and that in order to make this tacking permissible under the existing certificate, the Commission in the modification proceeding apparently felt it was necessary to expressly insert an anti-tacking prohibition. Since the Commission has stayed its order directing the insertion of such a prohibition, defendant contends it must be the Commission's position that the tacking operations are lawful.

■ I conclude that the purpose of the Commission's stay order in the modification proceeding was to permit Weigand to continue the tacking operations in which it has been engaged pending the Commission's determination of its application for permanent authority commensurate with its present operations. This conclusion is based upon (1) the ground asserted in the petition for the stay, (2) the evidence tendered in support thereof, (3) the terms of the stay order itself, (4) the absence of any other reasonable, alternative hypothesis with respect to the purpose of the stay, and (5) the fact that the Commission has granted stays for this purpose in similar circumstances in the past. In Chemical Leaman Tank Lines, Inc. v. United States, 298 F.Supp. 1269 (D.Del. 1969), this Court held that the Commission was under a legal duty to insert a no tacking provision into a certificate of public convenience and necessity that issued as a result of a conversion of a previously held contract carrier permit. On remand, the Commission did not immediately require that the tacking restriction be imposed. Rather, it provided the carrier with an opportunity to show that the continuation of its operations was warranted by the present and future public convenience and necessity. This matter is now pending before the Commission in Docket No. MC–119689, Brown Brothers Express, Inc. (Peerless Transport Corp.) and Docket No. MC–119689, Sub. 11, Peerless Transport Corp.

■ Assuming it were clear that defendant's certificate includes but a single grant of authority and that tacking is not permitted, it would not necessarily follow that Weigand's present course of conduct is in clear and patent violation of the Act. Since the Commission's stay order was intended to sanction defendant's tacking on a temporary basis, that tacking could be a clear and patent violation of the Act only if the stay order is invalid.

The Commission obviously thought that it could lawfully sanction defendant's tacking operation until its application for authority could be determined. Assuming it were wrong in this view, as plaintiffs contend, I nevertheless am not prepared to say that the matter is sufficiently clear to place this case within the sole category which Congress intended would be entertained under Section 322, i. e. "clear and patent violations."

■ Moreover, this is a case where the Commission has taken final, affirmative action for the purpose of sanction-

ing particular conduct [6] and a party adversely affected by that action seeks to overturn it. While the complaint does not directly ask for relief from a Commission order, the suit, in practical effect, constitutes a collateral attack on a Commission order. It seems apparent from the face of Section 322(b) that Congress did not envision its use for such collateral attacks. It is a vehicle for the enforcement of Commission orders; another vehicle has been provided for assaults thereon. The observations of the Third Circuit Court of Appeals in B. F. Goodrich Company v. Northwest Industries, Inc., 424 F.2d 1349, 1352–1354 (1970) are equally appropriate here:

. . . The complaint was in substance a collateral attack on an order of the Commission and an attack on such an order may be brought only before a three-judge court convened pursuant to 28 U.S.C. § 2325 . . .

\* \* \* \* \* \*

The statutory procedure for review is applicable although an order is not directly attacked—so long as the practical effect of a successful suit would contradict or countermand a Commission order. Venner v. Michigan Central Railroad, supra [271 U.S. 127, 46 S.Ct. 444, 70 L.Ed. 868]; Lambert Run Coal Co. v. B & O Railroad Co., supra [258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671]; Simpson v. Southwestern Railroad Co., 231 F.2d 59 (5th Cir. 1956), cert. denied, 352 U.S. 828, 77 S.Ct. 41, 1 L.Ed.2d 50. See also United States v. Southern Railway Co., 380 F.2d 49, 53 (4th Cir. 1967); United States v. Southern Railway Co., 364 F.2d 86, 92 (5th Cir. 1966), cert. denied, 386 U.S. 1031, 87 S.Ct. 1479, 18 L.Ed.2d 592.

Not surprisingly, plaintiffs argue that the validity of the stay order is irrelevant to a determination of whether there is a clear and patent violation of

the Act here. They cite in support of this position Baggett Transportation Company v. Hughes Transportation, Inc., 393 F.2d 710 (8th Cir. 1968). In Baggett, Tri-State Motor Transit Company, a common carrier, filed a Section 322(b) suit in the United States District Court for the Western District of Missouri against Baggett Transportation Company. The plaintiff alleged that the defendant was operating unlawfully by illegally tacking certain authorities issued by the Interstate Commerce Commission. Acting pursuant to 49 U.S.C. § 322(b)(3) the Commission gave notice that it was considering the issues raised in the suit by Tri-State. The District Court thereupon issued a stay. Subsequently, the Commission found Baggett to be operating unlawfully. Baggett then proceeded to appeal the Commission order to a three-judge panel of the United States District Court for the Northern District of Alabama. There Baggett was able to secure a stay against the Commission's cease and desist order. A subsidiary of Tri-State thereafter filed another Section 322(b) action in the Missouri District Court and successfully petitioned for a preliminary injunction. On appeal, the Eighth Circuit stated that the purpose of Section 322 was to afford injured parties a measure of self-protection against operations which are openly and obviously unlawful. The appeals court held that notwithstanding the stay of the Commission order which had been issued by the District Court for the Northern District of Alabama, the Missouri District Court had the right to issue an injunction if it found clear and patent violations of the Act were occurring.

The Baggett case is not helpful in determining the question here presented. Since in Baggett the stay order was issued by another district court and not by the Commission itself, there was no danger that a single judge in granting the requested relief would be "restrain-

6. While the parties differ on whether the substantive order in the modification proceeding is administratively final for pur-

poses of judicial review, they agree that the stay order is administratively final.

1244

ing the enforcement, operation or execution . . . of any order of the Interstate Commerce Commission," 28 U.S.C. § 2325. The stay was irrelevant to the question of jurisdiction under Section 322(b) in that case because it was irrelevant to the Commission's final determination that a violation was occurring. In short, *Baggett* presented no opportunity for conflict between the district court and the Commission.

Nor is the other case upon which plaintiffs rely in point. In Mercury Motor Express, Inc. v. Brinke, 475 F.2d 1086 (5th Cir. 1973) plaintiffs alleged that defendant was operating as a freight forwarder without an appropriate permit, and asked for an injunction. Jurisdiction was predicated on 49 U.S.C. § 1017(b)(2) which confers jurisdiction on the district court to enjoin a "clear and patent" violation of Section 1010 of Title 49. The lower court invoked the doctrine of primary jurisdiction and stayed proceedings pending final action by the ICC on the defendant's freight forwarder permit application. In reversing, the Fifth Circuit held that where jurisdiction was proper under the language of Section 1017(b)(2), that is where a violation was "clear and patent", the doctrine of primary jurisdiction was inapposite. This Court does not disagree with the holding in the *Mercury Motors* case as an abstract matter. However, the question in that case was whether the district court should have stayed its hand until the conclusion of a Commission proceeding. Here the question is whether this Court, under Section 322(b), can entertain a collateral attack on action already taken by the Commission. The doctrine of primary jurisdiction and the doctrine followed in the *Goodrich* case are quite distinct.

Defendant's motion to dismiss for lack of jurisdiction will be granted

except insofar as paragraphs IX and X of the complaint state a cause of action for violation of Section 306 of Title 49 of the United States Code. These paragraphs allege that Weigand is presently transporting *commodities* which its certificate does not authorize it to transport. The issues raised in these paragraphs were not considered by the Commission in the modification proceeding and, accordingly, defendant's position with respect thereto was not sanctioned by the stay order.[7] Accordingly, this segment of the plaintiffs' complaint presents a somewhat different situation from the standpoint of jurisdiction. The jurisdictional issue there presented cannot be resolved on the basis of the present record, however. The identity of the commodities transported by Weigand is in dispute and the answer to whether there has been a "clear and patent" violation of the Act requires a resolution of that dispute. That material dispute of fact similarly precludes summary judgment at this stage for the plaintiffs.

Submit order.

---

7. The issues raised by these paragraphs were considered in the petroleum products proceeding. Review Board No. 3 made a determination that Weigand was in violation of the Act as to this matter. Ap-

parently, no final Commission action has been taken, however, and, as indicated above, the defendant has moved to stay these proceedings and to consolidate them with the modification proceedings.