CHEMICAL LEAMAN, TANK LINES, INC., and Matlack, Inc., Petitioners,

v.

INTERSTATE COMMERCE COMMIS-SION and United States of America, Respondents,

Liquid Transporters, Inc., Rogers Cartage Co., Central Transport, Inc. and Peerless Transport Corp., Intervenors.

No. 77–1641.

United States Court of Appeals, Third Circuit.

Argued Jan. 18, 1979.

Decided Feb. 26, 1979.

Leonard A. Jaskiewicz, William H. Shawn, Grove, Jaskiewicz, Gilliam & Co-

bert, Washington, D.C., for petitioner and Liquid Transporters, Inc., intervening petitioner.

Mark L. Evans, Gen. Counsel, Henri F. Rush, Associate Gen. Counsel, Ellen K. Schall, Atty., I. C. C., Washington, D.C., for respondents.

John A. Vuono, William J. Lavelle, William A. Gray, Wick, Vuono & Lavelle, Pittsburgh, Pa., for intervenor-respondent.

Before ADAMS and WEIS, Circuit Judges and KUNZIG,* Judge.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This appeal is but another stage in an expensive and time consuming struggle that has lasted for over twelve years. Indeed, the roots of the litigation and the original clash between the predecessors in interest of the present petitioner and intervenor go back to 1958. Almost ten years ago, a three-judge court of the District of Delaware reversed and remanded an earlier determination of the Interstate Commerce Commission rejecting petitioner Chemical Leaman's effort to alter the common carriage certificate of intervenor Peerless Transport Corporation. In the course of its opinion, the three-judge court indicated that certain equitable defenses might be available to Peerless Transport but declined to rule on those defenses because of an inadequate record. On remand the Commission developed such a record and again refused to alter the certificate. Because we conclude that the Commission's conclusions were within its authority and amply supported by the record, we will affirm its order.

## I.

In 1957 Congress amended the Interstate Commerce Act by considerably narrowing the definition of contract carrier set forth in § 203(a)(15) of the Act.[1] Inevitably many of the then-existing contract carriers were no longer qualified as such under the new definition. Accordingly, Congress allowed these shippers to convert their old grants of authority into certificates of public convenience and necessity for common carriage. The certificates were to be issued under § 212(c) of the Act,[2] which permitted a former contract carrier to continue in operation as a common carrier, furnishing transportation "of the same commodities between the same points or within the same territory" as previously authorized.

This change of law soon produced a major controversy. Common carriers holding different grants of authority have traditionally been able to join, or "tack," their distinct permits so as to provide direct service between all points covered by their certificates. On the other hand, contract carriers have not been accorded this privilege; each of their grants of authority has been treated as separate and not properly connected with other permits held by the same shipper. At issue, therefore, was whether the converted contract carriers holding more than one grant of authority were now "common carriers" and thus able to "tack" their grants, or whether § 212(c) was intended to allow them only to continue their former shipping practices "between the same points or within the same territory," thus requiring the inclusion, in fact or constructively, of a "no-tacking" restriction in all new common carrier certificates.

One such converted carrier was Brown Brothers Express, predecessor in interest to intervenor Peerless Transport Corporation. Brown Brothers held two separate permits as a contract carrier. One grant permitted the carriage of certain named commodities between Curwensville, Pennsylvania and eight midwestern states. A second grant authorized the carriage of the same commodities between Curwensville and twelve eastern states. By tacking, of course, the

---

* Robert L. Kunzig, Judge, United States Court of Claims, Washington, D.C., sitting by designation.

1. See 49 U.S.C. § 303(a)(15) (1970). Compare the pre-1957 definition at 54 Stat. 920.

2. 49 U.S.C. § 312(c).

company could have provided direct service between eastern and midwestern shipping points through Curwensville. As a contract carrier, however, Brown Brothers could not and did not tack these two permits. Nonetheless, the common carrier certificate issued to the company in 1960[3] under § 212(c) contained no express prohibition of such a combination.

In March of 1966, Brown Brothers underwent a change of ownership and, simultaneously, filed a new tariff tacking the originally separate authorizations and thereby providing direct shipping through the Curwensville "gateway." Chemical Leaman, petitioner here, and a major shipper of chemicals, one of the commodities included in the Brown Brothers certificate, filed a petition on July 5, 1967, challenging Brown Brothers' right to tack its previously separate permits. This was sixteen months after the new tariff was filed, and seven years after Brown Brothers had received the unencumbered common carriage certificate.

Chemical Leaman argued that the statute as amended required that a no-tacking provision be included in the common carriage certificates awarded to converted contract carriers, and that such restriction must apply notwithstanding the failure of the Commission specifically to include that provision in the certificate issued to Brown Brothers in 1960. The Commission rejected the effort to reopen the matter, and Chemical Leaman appealed to a three-judge district court.

That court, speaking through Judge Layton, concluded that the statute did require that the authority of converted contract carriers not be expanded, and that, therefore, tacking was prohibited.[4] In so holding, the three-judge court relied on the identical position taken by the Commission itself in a different case.[5] Thus the three-judge court allowed Chemical Leaman to charge that the Brown Brothers' certificate, which by that time was held by Peerless Transport Corp., had been issued contrary to law, "that is, *ultra vires* the statute".[6]

Nonetheless, the three-judge court did not terminate the controversy at that point because Peerless Transport and the Commission also suggested the existence of certain equitable defenses that might justify a refusal to forbid tacking in this particular instance. The three-judge court stated that, on the record before it, it was unable to determine the validity of these claims and, therefore, remanded the petition to the Commission:

Defendants' second and third contentions are respectively, (a) that Chemical Leaman is estopped from questioning the Peerless certificate because Peerless, an innocent, good-faith purchaser of the certificate properly relied on the certificate as issued by the Commission and (b) that Chemical Leaman is guilty of laches in waiting some seven years before questioning the omission of the tacking restriction. We are unable at this time to decide the merits or the effect of either of these so-called equitable defenses. The proceedings before the Commission in 1967 were particularly abbreviated. The record before the Commission consists, so far as we are aware, of the joint petitions of the plaintiff and five other motor carriers, the replies by the intervening defendant Brown Brothers and, of course, the orders of the Commission denying the respective petitions. Nowhere do we find record proof of the elements on which a finding of equitable estoppel or laches could be predicated. In these circumstances, where the parties have not had sufficient opportunity to make a record before the Commission, we do not

---

3. Hearings on the conversion of the Brown Brothers contract carrier authority into a common carrier certificate began in 1958. The conversion was opposed by Chemical Leaman, who, nevertheless, did not appeal the Commission's 1960 decision to issue such a certificate.

4. *Chemical Leaman Tank Lines, Inc. v. United States,* 298 F.Supp. 1269, 1274 (D.Del.1969).

5. *See T. T. Brooks Trucking Co., Conversion Application,* 81 M.C.C. 561 (1959).

6. 298 F.Supp. at 1274.

decide whether the defenses are available in light of this opinion or the merits of the defenses. [T]he Commission is directed to permit the filing of the petition, and to take such further action as would be consistent with this opinion.[7]

On remand, an administrative law judge took voluminous testimony in thirty-eight days of hearings, accepted extensive briefs from the parties, and concluded after proceedings lasting almost three years that the equitable defense of laches did in fact apply and that any alteration of the Peerless certificate would not comport with established concepts of equity and fundamental fairness. This determination was upheld by the Commission in 1976. Chemical Leaman thereupon returned to the three-judge court, complaining that the I.C.C. had disregarded the mandate of that court by once again allowing Peerless to tack its separate grants of authority. The three-judge court stated that the Commission had acted in accordance with its mandate. But concluded that it lacked jurisdiction over the appeal because of a change in law, effected subsequent to its earlier opinion, which eliminated much of the jurisdiction of such courts:[8]

It is true that any court of competent jurisdiction has the power to make certain the execution of its decrees. . . The "Further Complaint" in this case reveals that the Commission followed our directions by permitting Chemical Leaman to file its petition, reopening the proceedings concerning the Brown Brothers certificate, and developing a record on the equitable grounds raised by Brown Brothers (Peerless). Thus there is nothing for this Court to enforce. Chemical Leaman seeks a form of relief different from that which we granted it in 1969.[9]

After this determination by the three-judge court, petitioner has now come to us, challenging the authority of the I.C.C. to rely upon equitable powers in altering the requirements of the statute.

## II.

Chemical Leaman tenders two issues to this Court. First, it and the other petitioners challenge the right of the I.C.C. to rely on equitable principles in authorizing a result allegedly contrary to law. Second, if the Commission is found to have properly exercised equitable authority, petitioners then challenge the correctness of the equitable conclusions reached.

## A.

The first of these issues is the more vexing one. Petitioner argues that an agency such as the I.C.C. must be bound by the statute from which it draws its authority and that, as a creation of that statute, such a body cannot exercise general equitable powers.[10] The I.C.C., on the other hand, contends that it is "beyond question that the Commission as a quasi-judicial body can consider matters of fairness and equity when determining whether parties before it are entitled to relief. . . ."[11] The question of the existence and extent of the Commission's equity powers is both important and relatively novel.

However limited may be the authority of the I.C.C. to consider matters of fairness and justice in determining if the parties

---

**7.** *Id.* 1274–75.

**8.** *Chemical Leaman Tank Lines, Inc. v. United States,* 446 F.Supp. 721, 723–24 (D.Del.1978). *See* Act of January 2, 1975, Pub.L.No.93–584, 88 Stat. 1917 codified at 28 U.S.C. §§ 2321, 2342.

**9.** 446 F.Supp. at 724.

**10.** Petitioner relies primarily on dicta in *Admiral-Merchants Motor Freight, Inc. v. United States,* 321 F.Supp. 353 (D.Colo.1971) ("As we view it, a legislative tribunal cannot exercise common law or equity jurisdiction unless this authority is expressly granted by the Congress") and *Weigand, Inc., Modification of Certificate,* 114 M.C.C. 806, 814 (1971) (". . . [E]ven if we were able to accept applicant's equitable argument (which, of course, we cannot), the paragraphs of authority in question would still not be susceptible to tacking . .").

**11.** App. 970. See cases cited in notes 13–16, *infra.*

before it are entitled to relief, we are convinced that the Commission did not go beyond its authorization in this particular case. Section 17(3) of the Interstate Commerce Act instructs the Commission to conduct its proceedings "in such manner as will best conduce . . . to the ends of justice."[12] The Commission itself does not doubt its right and duty to consider the equities in evaluating cases affecting or involving national transportation policy.[13] Moreover, several courts have implicitly recognized the applicability, in certain circumstances, of equitable defenses, particularly laches.[14] Indeed we can find no authority for the proposition that equity principles are never to be relied upon in cases arising under the Interstate Commerce Act.[15] As one three-judge court in this Circuit has suggested, if Congress intended to exclude all equitable considerations from such cases, there is no reason to believe that it intended this prohibition to apply only to the I.C.C. and not to the courts, who must also respond to the will of Congress in this regard.[16]

 If it is accepted, then that equity principles and equitable defenses may be relied upon in deciding Interstate Commerce Act cases, the justification for the I.C.C.'s development here of a record on possible equitable defenses, and ultimate determination of the case on equitable grounds, is particularly compelling. The 1969 decision of the three-judge court hearing this very case recognized Peerless Transport's equitable claims and declined to rule upon them only because of an inadequate record.[17] If the three-judge court had believed that Peerless Transport, and the Commission, were barred from relying on equitable considerations in any event, there would have been no occasion for it to have declined to rule on these defenses, in that they would have been unavailable as a matter of law. That a development of the record and a possible ruling on the equitable defenses was within the mandate of the three-judge court was put beyond peradventure by the same three judges in their jurisdictional opinion nine years later.

"On remand, the ICC permitted Chemical Leaman to file its petition and reopened the proceedings concerning the Brown Brothers certificate. In finding that Chemical Leaman's petition was barred by laches, the Commission based its denial of relief upon a ground specifically left open by our 1969 opinion.[18]

Thus, in this very case, a court possessing undoubted general equity powers, specifically left open the possibility of consideration of the equitable claims pressed by Peerless Transport. Under these circumstances the Commission may hardly be faulted for developing such a record and exercising the discretion clearly contemplated in the 1969 opinion of the three-judge court. Whatever the ultimate authority of the Commission may be to consider equitable defenses on its own, this much, at least, was not beyond its authority.

---

12. 49 U.S.C. § 17(3) (1970).

13. See Curtis, Inc., Extension-Meats Over Irregular Routes, 113 M.C.C. 170 (1971). The Commission adopted this view in its 1976 decision in the present case, and presses it on appeal. See n. 9 supra. Its continued adherence to this position militates against putting undue emphasis on the passing comment in Weigand, see n. 10 supra.

14. See Bradley v. United States, 268 F.Supp. 871, 876 (D.Conn.1967) (plaintiffs seeking reconsideration of certificate guilty of laches); Willey v. United States, 245 F.Supp. 669, 676 (E.D.Pa.1965) (laches considered a possible defense, but rejected out of hand on facts of case); Smith & Solomon Trucking Co. v. United States, 120 F.Supp. 277, 282–83 (D.N.J.1954) (laches found "glaringly apparent" in challenge to original certificate).

15. See Chemical Leaman Tank Lines, Inc. v. United States, 376 F.Supp. 508 (D.Del.1974) (Commission authority to issue stay upheld); Admiral-Merchants Motor Freight, Inc. v. United States, 321 F.Supp. 353, 359 (D.Colo.1971) (Equitable estoppel justifies refusal to annul Commission order).

16. Chemical Leaman Tank Lines, Inc. v. United States, 376 F.Supp. 508, 513 (D.Del.1974).

17. 298 F.Supp. at 1274–75.

18. 446 F.Supp. at 724.

### B.

The Commission's refusal to require the inclusion of a no-tacking provision in Peerless Transport's common carriage certificate rests on a finding of inexcusable delay by Chemical Leaman in protecting its rights and a determination that such inaction, when coupled with other facts of the case, constituted the equitable defense of laches, and that an alteration of the certificate now would be a harsh and inequitable result.

■ We agree that the record supports such a conclusion. Laches is, or is based on, "delay attended by or inducing change of condition or relationship".[19] The delay in the present case is premised on Chemical Leaman's failure to challenge the I.C.C.'s omission of a no-tacking provision in the converted certificate until July 5, 1967, seven years after the certificate was issued and sixteen months after Peerless Transport filed its new tariff. That Chemical Leaman was on notice of the importance of this provision is manifest. It had been a participant before the Commission in 1959, when the *Brooks* case, holding that the Interstate Commerce Act required no-tacking provisions in the converted certificates of former contract carriers, was decided.[20] Similarly it had opposed the conversion of the very certificate challenged here before it was issued in 1960, and had not pressed its opposition by appealing from the Commission's decision to issue it, even though the certificate contained no bar to tacking on its face. Moreover, although the owners of the converted certificate did not attempt to tack until 1966, even then Chemical Leaman delayed sixteen months before mounting a challenge.

In the interim there was a sufficient change of circumstances to support a determination that the doctrine of laches applies. Thus, between 1966 and 1967, there were two transfers of the ownership of the Peerless certificate, both related to the decision to offer direct service through the Curwensville link in the certificate. The new owners relied upon the clear and unambiguous language in the certificate, and invested in equipment and other facilities with which to conduct operations.[21] Other findings establish that over 95% of the revenue of Peerless Transport would be lost if tacking were forbidden, and such a ruling would "essentially terminate all income necessary to maintain a viable business."[22] Peerless Transport also estimates that 110 of its 117 employees would lose their employment if the certificate were now to be altered.[23] These and other prospective losses to various persons and entities support a conclusion that it would be an inequitable and harsh result if the certificate were to be altered now, almost twenty years after its issuance.

### III.

In addition to its equitable findings and conclusions, the I.C.C. also undertook findings of public convenience and necessity, concluding that the issuance of a common carriage certificate to Peerless Transport allowing direct shipping was in the public interest and filled a public need, at least as to most of the states presently served by intervenor, Peerless Transport.[24] However, in view of its disposition of Chemical Leaman's petition, the Commission dismissed Peerless Transport's Sub-No. 11 petition seeking the issuance of a new certificate. Because we affirm the Commission's resolution of Chemical Leaman's petition, we are not called upon to consider this aspect of the case, nor to remand to the Commission for such consideration.

The order of the Interstate Commerce Commission denying the petition will be affirmed.

---

**19.** Black's Law Dictionary 1016 (4th ed. 1968).

**20.** *See* Decision of the Administrative Law Judge at App. 362.

**21.** App. 979; 999–1002.

**22.** Decision of the Administrative Law Judge. App. 408.

**23.** App. 167–68, 1008–09, 1033–34.

**24.** App. 971.