**CHEMICAL LEAMAN TANK LINES, INC., et al., Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

and

**A. J. Weigand, Inc., Intervening Defendant.**

Civ. A. No. 4682.

United States District Court, D. Delaware.

May 28, 1974.

Daniel M. Kristol, of Killoran & Van Brunt, Wilmington, Del., Leonard, A.

Jaskiewicz, and Ronald N. Cobert, of Grove, Jaskiewicz & Gilliam, Harry C. Ames, Jr., of Ames, Hill & Ames, Washington, D.C., Leonard R. Kofkin, of Axelrod, Goodman, Steiner & Bazelon, Chicago, Ill., for plaintiffs.

Ralph F. Keil, U. S. Atty., Wilmington, Del., Thomas E. Kauper, Asst. Atty. Gen., Washington, D.C., John H. D. Wigger, Dept. of Justice, Washington, D.C., for the United States.

Fritz R. Kahn, and Hanford O'Hara, I.C.C., Washington, D.C., for the Interstate Commerce Commission.

E. Dickinson Griffenberg, Jr., of Potter, Anderson & Corroon, Wilmington, Del., Jacob P. Billig, of Billig, Sher & Jones, P.C., Washington, D.C., for intervening defendant.

## OPINION

Before VAN DUSEN, Circuit Judge, LATCHUM, Chief District Judge, and STAPLETON, District Judge.

### PER CURIAM:

In this suit, the plaintiffs, four certificated trucking companies, seek to set aside an order of the Interstate Commerce Commission ("the Commission") which stayed the effective date of an earlier order.[1] That earlier order issued on December 10, 1971, modified the outstanding certificate of A. J. Weigand, Inc. ("Weigand"), an intervenor in this suit, by inserting into it an "anti-tacking" provision.[2] Plaintiffs' contention, in brief, is that the effect of the challenged order is to grant operating rights to Weigand in contravention of the procedural requirements of the Interstate Commerce Act ("the Act").[3] Defendants are the United States,[4] the Commission, and Weigand, who has intervened as of right.[5] A three-judge court has been convened to determine the issues raised by the pleadings.[6] Our jurisdiction is sound.[7]

## BACKGROUND

The administrative proceedings that have preceded this action present a somewhat complex setting for the present dispute. By application filed March 22, 1948, Weigand sought a permit authorizing the transportation of various specified commodities between described points. A contract carrier permit issued in that proceeding for the transportation (1) of such commodities as are manufactured and sold by chemical manufacturing plants (except petroleum products, in bulk, in tank trucks), from Dover, Ohio, to points in thirteen states and those in a described portion of another state, and (2) of equipment, materials and supplies used in the conduct of such business from points in the enumerated designation states to Dover.

Pursuant to Section 212(c) of the Act, 49 U.S.C. § 312(c), a proceeding was instituted on January 3, 1958 (No. MC–7768 (Sub. No. 11)), to determine whether Weigand's contract carrier permit should be revoked, and, in lieu thereof, a certificate of public convenience and necessity issued authorizing common carrier operations commensurate with those theretofore performed as a contract carrier. In this "conversion proceeding," an examiner recommended that Weigand be issued a certificate in lieu of and commensurate with its then held permits, subject to several conditions, one

---

1. The order challenged here is actually two orders: the Commission's stay order of August 4, 1972 and the Commission's order of January 26, 1973, which affirmed that stay order. The discussion here comprehends both.

2. "Tacking is the joining of separate grants of authority by routing shipments through a point common to the separate authorities so as to provide a through carrier service between the territory served under one author-ity and that served under another and separate authority." Chemical Leaman Tank Lines, Inc. v. United States, 298 F.Supp. 1269, 1271 (D.Del.1969).

3. 49 U.S.C. § 1 et seq. (1959).

4. 28 U.S.C. § 2322.

5. 28 U.S.C. § 2323.

6. 28 U.S.C. §§ 2325, 2284.

7. 28 U.S.C. § 1336.

of which stated "that the separately stated authorities herein granted shall not be joined or tacked, one to another, for the purpose of performing any through transportation." The certificate that resulted from the conversion proceeding, however, did not contain the specific tacking prohibition recommended by the examiner.

The certificate issued by the I.C.C. following the conversion proceedings contained the following paragraphs:

3. Such commodities as are manufactured and sold by chemical manufacturing plants (except petroleum products, in bulk, in tank cars) and returned empty containers, for such commodities when moving to or from warehouses or other facilities of chemical manufacturing plants between Dover, Ohio, on the one hand, and on the other, points in Illinois, Indiana, Kentucky, Ohio, West Virginia, New York, Pennsylvania, Connecticut, New Jersey, Delaware, Maryland, and the southern peninsula of Michigan; and

4. Machinery, equipment, materials, and supplies used in the business mentioned immediately above, from points in the states named immediately above to Dover, Ohio.

Weigand, by a tariff publication effective November 16, 1968, began to hold itself out to perform service throughout the fourteen state territory set forth in its certificate via a Dover gateway (that is, service between such points within those states which practicably could move through Dover, Ohio). The theory upon which this service was offered was that certain materials and supplies used in the chemical manufacturing business could move from designated points to Dover, Ohio under the authority granted in paragraph 4 of its certificate and thence could be transported to designated points within the fourteen state area under the authority granted in paragraph 3 of the certificate, if such materials and supplies were also "such commodities as are manufactured and sold by the chemical manufacturing plants."

By petition filed before the I.C.C. on December 6, 1968, Chemical Leaman, a plaintiff herein,[8] requested that Certificate No. MC–119968 be modified so as to include an express condition preventing the separately stated authorities therein from being tacked one to another to provide any through transportation. The earlier "conversion proceeding" was reopened and consolidated with this "modification proceeding." After a hearing, the Administrative Law Judge found (1) that the restriction against tacking was omitted due to inadvertent ministerial error; (2) that Weigand had shown good and sufficient cause why its certificate should *not* be modified to conform to the earlier report and recommended order in the conversion proceeding; and (3) that the proceeding should be discontinued. In a Report and Order of December 10, 1971, Review Board No. 3 of the Commission reversed this holding and found that the Weigand certificate should be modified by the imposition of a tacking restriction. A. J. Weigand, Inc., Modification of Certificate, No. MC–119968, 114 M.C.C. 806 (1971).

By order of June 22, 1972, Division 1 of the Commission, acting as an Appellate Division, affirmed the Review Board order. This order of Division 1, in effect prohibiting Weigand from tacking the two involved paragraphs of its authority, was to have become effective on August 5, 1972. On July 27, 1972, however, Weigand filed with the Commission a petition for modification of the effective date of Division 1's June 22, 1972 order. In support of its position Weigand submitted an affidavit of its President which stated facts tending to show that the cessation of the operations which would result from implementation of the order would cause the im-

8. Within the following six weeks the other plaintiffs in this action joined in the Chemical Leaman petition as intervenors.

mediate collapse of Weigand. This affidavit concluded:

> The failure to grant this stay, therefore, would also render moot any future effort which Weigand might make to show that the public convenience and necessity requires the continuation of its present operations, even if temporary authority should ultimately be granted to applicant. This is because Weigand, for the reasons above indicated, could not survive the cessation of present operations, even for the period of August 5, 1972 to the date of any disposition of a temporary authority application, and it would be impossible for it to resume such present operations either under temporary or permanent authority.

The express purpose of Weigand's request for a stay was to enable it to file and prosecute applications for temporary and permanent authority to permit the continuation of its present operations. By an order issued on August 4, 1972, the Commission, Division 1, acting as an Appellate Division, held:

> That the effective date of the said order of December 10, 1971, be, and is hereby, fixed as October 4, 1972, subject to the next succeeding paragraph.

> *It is further ordered* that if the applicant files an appropriate application for authority, to the extent Certificate No. MC–119968 is modified by the Report and Order of December 10, 1971, on or before the effective date fixed by this Order, the said effective date shall be treated as being indefinitely postponed pending a final decision on the application.

Plaintiffs herein then asked the Commission to reconsider its grant of a stay. On March 9, 1973, Division 1 denied this petition on the ground that "the Order of August 4, 1972 was entered in accordance with law after it appeared that the effective date of the Order of December 10, 1971, should be postponed. . . ."

Defendant has filed an application with the Commission for permanent authority to continue the operations that it has conducted in the recent past. A. J. Weigand, Inc., Dkt. No. MC–119968 (Sub. No. 6).

In October, 1972, plaintiffs initiated a single judge action in this Court under Section 222(b)(2) of the Act. 49 U.S.C. § 322(b)(2). Alleging Weigand's tacking operations to be in clear and patent violation of Section 206 of the Act, Chemical Leaman there sought to have those operations enjoined. On motions for summary judgment and dismissal for lack of jurisdiction the Court dismissed the relevant portions of the complaint. Referring to the stay order here challenged, the court there concluded that "the purpose of the Commission's stay order in the Modification Proceeding was to permit Weigand to continue the tacking operations in which it has been engaged pending the Commission's determination of its application for permanent authority commensurate with its present operations," and that "since the Commission's stay order was intended to sanction defendant's tacking on a temporary basis, that tacking could be a clear and patent violation only if the stay order is invalid." The court concluded that that case presented a collateral attack upon a final commission order for which the proper forum was a statutory three-judge court. Chemical Leaman Tank Lines, Inc. v. A. J. Weigand, Inc., 359 F.Supp. 1238 (D.Del.1973). This frontal attack on the stay order followed.

## THE LEGAL ISSUE

The issue presented here is whether the Commission exceeded its statutory authority in staying its order requiring the insertion of an anti-tacking provision in intervenor's certificate of public convenience and necessity.

Resting its attack in part upon this Court's determination that the stay or-

der was meant to permit the continuation of operations in which Weigand was then engaged, plaintiffs assert that in so acting the Commission has unlawfully permitted the continuation of operations which it has itself found to be unauthorized under the existing certificate. This action, it is urged, amounts to the Commission's approving additional operating authority without complying with the procedures required by the Act for the issuance of a certificate of public convenience and necessity. Those procedures are said to define the sole legitimate method for the Commission to confer the authority necessary to transport commodities as a common carrier in interstate commerce.

Plaintiffs' contention that the stay order was the practical and legal equivalent of the issuance of a certificate of public convenience and necessity is based upon its view that Weigand, even in the absence of an express no tacking provision, has no authority under its certificate to "tack."[9] Procedurally, the modification proceeding did not directly pose the question of whether this view of the extent of Weigand's operating authority was correct. It was not a proceeding in which Weigand was charged with operating beyond its authority; the question posed was whether the certificate should be modified by the inclusion of an express no tacking provision. While answering that question, however, the Administrative Law Judge expressed the opinion, based on Beem-Interpretation of Certificate, 66 M.C.C. 259 (1955), that Weigand's certificate, absent an express prohibition, authorized tacking. Review Board No. 3 disagreed with this view and, in dicta of its own, indicated that the certificate, even absent the omitted restriction, did not authorize tacking. Reliance was placed on Zirbel—Investigation of Operations, 53 M.C.C. 684 (1951).

Division 1 of the Commission issued only an order affirming the Review Board's disposition of the modification proceeding, and it is not altogether clear what view it took of the scope of the existing certificate. It is clear, however, as this Court observed in the earlier case, that Division 1 intended by its stay of the effective date of the order terminating the modification proceeding to authorize continued operations under Weigand's tacking theory pending disposition of an application for authority expressly sanctioning those operations. From this action it is logical to assume that the Commission thought additional authority would be necessary in order for Weigand's operations to continue on a permanent basis and we make that assumption for present purposes.

The question presented to the Commission by Weigand's motion to stay implicated diverse interests. In addition to the obvious interests of the carrier itself, affidavits offered to the Commission by eight shippers stated that each used Weigand's services and would be injured if those services were to be withdrawn. Moreover, from the affidavit before the Commission at that time it appears that immediate cessation of tacking operations would result in the loss of 80% of Weigand's revenues, the idleness of 75% of Weigand's fleet, loss of employment for almost 80% of Weigand's employees, and the inability to meet current debt repayment schedules which would result in a likely liquidation of the company. It further appeared that Weigand had engaged in the challenged operations on a continuous basis for the preceding five years and had expended large sums of money in reliance upon its rights to conduct tacking operations under its certificate.

Thus, at the time of the stay application, (a) the carrier had provided a

9. It seems clear to us—and plaintiffs do not seriously contend otherwise—that if Weigand's certificate as presently written permits tacking, the failure of the Commission to insist that such legitimate power be immediately altered would constitute no abuse of its power. Carl Subner Trucking, Inc., Modificaton of Certificate, 103 M.C.C. 307, 313 (1956); 49 U.S.C. § 321(b).

service to shippers for an extended period of time in reliance upon an outstanding certificate, which had arguably authorized those operations, (b) the Commission had determined that those operations were not so authorized, (c) the carrier wished the opportunity to demonstrate that the service was required by the public convenience and necessity and that it was fit to perform it, (d) there was reason to believe that such a demonstration might be made and (e) immediate suspension of the carrier's operations pending disposition of an application for operating authority might prove to be a fatal blow to the carrier and result in injury to the shipping public which it served. Under these circumstances, we believe the Commission's action was authorized.

While the present question arises in a different procedural context, it is not unlike the question passed upon in Interstate Commerce Commission v. Barron Trucking Company, 276 F.2d 275 (3rd Cir. 1960); Auto Drive-Away Company of Hialeah, Inc. v. Interstate Commerce Commission, 360 F.2d 446 (5th Cir. 1966); and Interstate Commerce Commission v. A. A. A. Con Drivers Exchange, Inc., 340 F.2d 820 (2nd Cir. 1965). In each of these cases, the Commission had determined that an existing carrier operation had been conducted without the sanction of a certificate of public convenience and necessity and had brought suit to enforce compliance with the Act. In each, the Court of Appeals agreed with the Commission's determination, but recognized the power of a federal district court to stay injunctive relief pending final Commission disposition of an application for permanent authority covering the challenged operations. The considerations which led those courts to suggest that such a stay might be appropriate are similar to those which Weigand urged before the Commission in this case. In the *Barron Trucking* case, the Third Circuit, with one judge dissenting, recognized the power of stay in the face of an argument virtually identical to that here made by the plaintiffs.

The plaintiffs urge that these cases are distinguishable because they deal with the equitable jurisdiction of courts rather than the legislatively granted power of an administrative agency. We find this distinction unpersuasive. The essence of the plaintiffs' argument is that recognition of a power of stay in these circumstances is contrary to the provisions of the Interstate Commerce Act. Yet the courts are bound by the provisions of that Act no less than the Commission. While conceivably Congress might have contemplated a broader range of discretion for the courts than for the Commission, in light of the Commission's role as the primary interpreter and guardian of the National Transportation Policy, we would be reluctant to infer such an intent in the absence of clear congressional language to that effect. An examination of the Act reveals no such mandate. Indeed, we believe the language of the statute provides ample express authority for the Commission's action.

First, Section 17(3) of the Act mandates that the Commission shall conduct its proceedings "in such manner as will best conduce . . . to the ends of justice." Second, Section 221(b) confers on the Commission power to set the effective date of its orders, "within such reasonable time, not less than thirty days, as the Commission may prescribe." Finally, Section 204(c), which confers on the Commission power to investigate whether any carrier has failed to comply with the Act, provides that if the Commission finds noncompliance, it "shall issue an appropriate order." Use of the word "appropriate" here rather clearly implies the existence of authority in the expert agency to shape its orders so as to best serve the purposes of the National Transportation Policy which the Act was designed to implement. The Congressional Declaration of National Transportation Policy, 54 Stat. 899 provides:

It is hereby declared to be the national transportation policy of the Con-

**514**

gress to provide for fair and impartial regulation of all modes of transportation subject to the provisions of this Act. . . .

\* \* \* \* \* \*

to the end of developing, coordinating, and preserving a national transportation system . . . adequate to meet the needs of the commerce of the United States, of the Postal Service and of the national defense. All of the provisions of this Act shall be administered and enforced with a view to carrying out the above declaration of policy.

Each of the above-quoted sections of the Act evidence a power in the Commission to adjust the effective date of its orders to the end that the National Transportation Policy shall be served. Based upon those sections as well as upon the *Barron Trucking* case, the *Hialeah* case and the *Con Drivers* case, we conclude that the Commission in appropriate circumstances is authorized in a Section 204(c) proceeding, despite a finding of noncompliance, to stay its cease and desist order pending disposition of an application for a certificate of public convenience and necessity. While the stay order here under review was entered in a modification proceeding under Section 212, the record indicates that the intent of the Commission was to accomplish the same result and we believe its authority to so act follows *a fortiori* from its authority in a Section 204(c) context.

The facts before the Commission at the time of the entry of the stay order were such as to warrant the conclusion that a stay would serve the "ends of justice" and the National Transportation Policy. Under these circumstances, we are unwilling to say either that the Commission exceeded its lawful authority or that it abused its discretion in exercising that authority. Judgment will, accordingly, be entered for the defendants.